[No. H018197. Sixth Dist. May 12, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH JOE MARTINEZ, Defendant and Appellant.

**COUNSEL**

David D. Martin, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Matthew P. Boyle, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.**—California's "Three Strikes" statutes[1] provide for life imprisonment with a minimum term of at least 25 years for a conviction of any third felony after 2 or more prior convictions of what are deemed by statute to be "violent" (§ 667.5, subd. (c)[2]) or "serious" (§ 1192.7, subd. (c))[3] felonies. The third felony need not be violent or serious.

[1]Unspecified section references are to the Penal Code.

Section 1170.12, subdivision (c)(2)(A), states: "If a defendant has two or more prior felony convictions, as defined in paragraph (1) of subdivision (b), that have been pled and proved, the term for the current felony conviction shall be an indeterminate term of life imprisonment . . . ." Section 667, subdivision (e)(2)(A), which took effect before section 1170.12, states: "If a defendant has two or more prior felony convictions as defined in subdivision (d) that have been pled and proved, the term for the current felony conviction shall be an indeterminate term of life imprisonment . . . ."

[2]Section 667.5, subdivision (c), currently states: "For the purpose of this section, 'violent felony' means any of the following: [¶] (1) Murder or voluntary manslaughter. [¶] (2) Mayhem. [¶] (3) Rape as defined in paragraph (2) or (6) of subdivision (a) of Section 261 or paragraph (1) or (4) of subdivision (a) of Section 262. [¶] (4) Sodomy by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person. [¶] (5) Oral copulation by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person. [¶] (6) Lewd acts on a child under the age of 14 years as defined in Section 288. [¶] (7) Any felony punishable by death or imprisonment in the state prison for life. [¶] (8) Any felony in which the defendant inflicts great bodily injury on any person other than an accomplice which has been charged and proved as provided for in Section 12022.7 or 12022.9 on or after July 1, 1977, or as specified prior to July 1, 1977, in Sections 213, 264, and 461, or any felony in which the defendant uses a firearm which use has been charged and proved as provided in Section 12022.5, 12022.53, or 12022.55. [¶] (9) Any robbery perpetrated in an inhabited dwelling house, vessel, as defined in Section 21 of the Harbors and Navigation Code, which is inhabited and designed for habitation, an inhabited floating home as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, an inhabited trailer coach, as defined in the Vehicle Code, or in the inhabited portion of any other building, wherein it is charged and proved that the defendant personally used a deadly or dangerous weapon, as provided in subdivision (b) of Section 12022, in the commission of that robbery. [¶] (10) Arson, in violation of subdivision (a) of Section 451. [¶] (11) The offense defined in subdivision (a) of Section 289 where the act is accomplished against the victim's will by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person. [¶] (12) Attempted murder. [¶] (13) A violation of Section 12308. [¶] (14) Kidnapping, in violation of subdivision (b) of Section 207. [¶] (15) Kidnapping, as punished in subdivision (b) of Section 208. [¶] (16) Continuous sexual abuse of a child, in violation of Section 288.5. [¶] (17) Carjacking, as defined in subdivision (a) of Section 215, if it is charged and proved that the defendant personally used a dangerous or deadly weapon as provided in subdivision (b) of Section 12022 in the commission of the carjacking. [¶] (18) Any robbery of the first degree punishable pursuant to subparagraph (A) of paragraph (1) of subdivision (a) of Section 213. [¶] (19) A violation of Section 264.1. [¶] The Legislature finds and declares that these specified crimes merit special consideration when imposing a sentence to display society's condemnation for these extraordinary crimes of violence against the person."

[3]Section 1192.7, subdivision (c), currently states: "(c) As used in this section, 'serious felony' means any of the following: [¶] (1) Murder or voluntary manslaughter. [¶] (2)

Defendant Ralph Joe Martinez pleaded no contest to the felonies of possessing methamphetamine (count 1; Health & Saf. Code, § 11377, subd. (a)) and attempting by threat to deter an executive peace officer from carrying out his duty (count 5; § 69), and the misdemeanors of driving under the influence (count 2; Veh. Code, § 23152, subd. (a)), driving with a blood-alcohol level at least .08 percent (count 3; Veh. Code, § 23152, subd. (b)), and using phencyclidine (count 4; Health & Saf. Code, § 11550, subd. (a)).

Defendant also admitted having the following criminal history: a 1995 conviction of assault with personal use of a deadly weapon, after which he served a prison term (People v. Martinez (Super. Ct. Santa Clara County, 1985, No. 176512)), and 1985 convictions of robbery and attempted robbery,

---

Mayhem. [¶] (3) Rape. [¶] (4) Sodomy by force, violence, duress, menace, threat of great bodily injury, or fear of immediate and unlawful bodily injury on the victim or another person. [¶] (5) Oral copulation by force, violence, duress, menace, threat of great bodily injury, or fear of immediate and unlawful bodily injury on the victim or another person. [¶] (6) Lewd or lascivious act on a child under the age of 14 years. [¶] (7) Any felony punishable by death or imprisonment in the state prison for life. [¶] (8) Any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice, or any felony in which the defendant personally uses a firearm. [¶] (9) Attempted murder. [¶] (10) Assault with intent to commit rape, mayhem, sodomy, oral copulation, or robbery. [¶] (11) Assault with a deadly weapon or instrument on a peace officer. [¶] (12) Assault by a life prisoner on a noninmate. [¶] (13) Assault with a deadly weapon by an inmate. [¶] (14) Arson. [¶] (15) Exploding a destructive device or any explosive with intent to injure. [¶] (16) Exploding a destructive device or any explosive causing great bodily injury or mayhem. [¶] (17) Exploding a destructive device or any explosive with intent to murder. [¶] (18) Burglary of an inhabited dwelling house, vessel, as defined in the Harbors and Navigation Code, which is inhabited and designed for habitation, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, trailer coach, as defined by the Vehicle Code, or the inhabited portion of any other building. [¶] (19) Robbery or bank robbery. [¶] (20) Kidnapping. [¶] (21) Holding of a hostage by a person confined in a state prison. [¶] (22) Attempt to commit a felony punishable by death or imprisonment in the state prison for life. [¶] (23) Any felony in which the defendant personally used a dangerous or deadly weapon. [¶] (24) Selling, furnishing, administering, giving, or offering to sell, furnish, administer, or give to a minor any heroin, cocaine, phencyclidine (PCP), or any methamphetamine-related drug, as described in paragraph (2) of subdivision (d) of Section 11055 of the Health and Safety Code, or any of the precursors of methamphetamines, as described in subparagraph (A) of paragraph (1) of subdivision (f) of Section 11055 or subdivision (a) of Section 11100 of the Health and Safety Code. [¶] (25) Any violation of subdivision (a) of Section 289 where the act is accomplished against the victim's will by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person. [¶] (26) Grand theft involving a firearm. [¶] (27) Carjacking. [¶] (28) Any violation of Section 288.5. [¶] (29) Any violation of Section 244. [¶] (30) Assault with a deadly weapon or instrument on a firefighter. [¶] (31) Any violation of Section 264.1. [¶] (32) Any violation of Section 12022.53. [¶] (33) Any attempt to commit a crime listed in this subdivision other than an assault. [¶] (34) Any conspiracy to commit an offense described in paragraph (24) as it applies to Section 11370.4 of the Health and Safety Code where the defendant conspirator was substantially involved in the planning, direction, or financing of the underlying offense."

after which he served a prison term (People v. Martinez (Super. Ct. Santa Clara County, 1985, No. 104058)).

Due to defendant's three prior strike felonies, the trial court sentenced defendant, then age 43, to life in prison with a minimum term of 25 years on count 1, with a similar concurrent term on count 5, and 6-month concurrent terms on counts 2 and 4, with the term on count 3 stayed. The trial court struck prison term enhancements.

On appeal defendant contends his sentence to life imprisonment is unconstitutionally cruel or unusual. For the reasons stated below, we will affirm the judgment.

*Defendant's current offenses*

The following evidence was presented at the preliminary examination. On September 1, 1996, about 1:30 a.m., Fabian Ramirez, a Campbell Police Officer, noticed a car weaving on the street. He stopped the car. Defendant was the driver. He was obviously intoxicated. He had an open beverage container between his legs. He staggered when he got out of the car. He refused to perform field sobriety tests. The officer took defendant into custody. During a search he found a coin bag containing .18 grams of methamphetamine in defendant's pants pocket. The officer forcibly obtained a blood sample from defendant when defendant refused to submit voluntarily. The blood sample revealed defendant had consumed phencyclidine. His blood-alcohol level was .17 percent. During processing, defendant called Officer Ramirez a "punk" and a "bitch" and said he would see him on the streets when he got out.

*Defendant's criminal history*

The probation report described defendant's three prior serious felony convictions. In 1994, a female companion of defendant left a convenience store after 2:00 a.m. with a 12-pack of beer. The store clerk followed her out of the store, saying she had not paid. Defendant brandished a screwdriver. The clerk felt threatened and ran inside the store. Defendant and the female took off with the beer. Defendant was convicted in 1995 of assault with personal use of a deadly weapon.

In 1985, defendant accosted two people in a car at a fast-food restaurant. Defendant said he needed $2 for gas. When the victim said he had no money, defendant pulled a long-barreled gun from his waistband and demanded money or "I'll blow your head off." The victim gave defendant $60 and

defendant left. Shortly thereafter, defendant repeated the same behavior with a pedestrian. The pedestrian was a security guard who disarmed defendant, determining the gun was a pellet gun. Defendant was convicted of robbery and attempted robbery.

Defendant, born in August 1954, also had three other felony convictions from 1988, 1990, and 1994 for possessing a controlled substance. He had 50 misdemeanor convictions dating back to 1973, usually for public intoxication or using a controlled substance.[4] Among these we note two convictions for battery (§ 242) in 1984 and 1985, one for brandishing a deadly weapon other than a firearm (§ 417) in 1984, and one for assault (§ 240) in 1990. No details appear in the record.

*Defendant's personal history*

Defendant presented the following "social history" at sentencing. Defendant's father was an alcoholic construction worker who was physically abusive of his wife and children. Defendant's mother was also a heavy drinker. His parents separated when he was seven years old. He lived with his father until the age of nine, when he rejoined his mother.

Defendant had learning disabilities in school and remains illiterate, despite placement in special education classes. As a youth, defendant preferred the streets to school and home. Defendant started sniffing paint in sixth grade. He began smoking marijuana and drinking in junior high. He began using stronger drugs in ninth grade, discovering phencyclidine, which became his favorite and mainstay, along with alcohol. He dropped out of high school in the 11th grade because his girlfriend was pregnant. He worked in restaurants to try to support his child and girlfriend. They eventually separated.

It has been difficult for defendant to find work due to his illiteracy. He committed the robbery in 1985 while "high on drugs and alcohol." Once out of prison, he violated parole several times by using drugs.

---

[4]Defendant had nine convictions for being under the influence of a controlled substance (Health & Saf. Code, § 11550), once in 1984, three times in 1985, once in 1988, once in 1989, two times in 1990, and once in 1994. He had seven convictions for public intoxication (§ 647, subd. (f)), once in 1973, two times in 1984, once in 1985, once in 1990, and two times in 1993.

Defendant had a number of Vehicle Code convictions, for driving while intoxicated (§ 23152, formerly § 23102) in 1978 and 1987, driving away after damaging property (§ 20002) twice in 1978 and once in 1984, driving with a suspended or revoked license (§ 14601.1) three times in 1974 and once in 1975, driving without a valid license (§ 12500) in 1978, not possessing a valid license in 1974 (§ 12951), making an illegal U-turn in 1974 (§ 21801), tampering with a vehicle (§ 10852) in 1973, and failure to appear on citations (§ 40508) once in 1974, twice in 1981, and once in 1985.

Apart from those convictions described in the text, defendant also had a misdemeanor conviction for disturbing the peace (§ 415) in 1976.

Since defendant's latest incarceration on September 1, 1996, he has been pursuing drug treatment programs, including anger management, as well as furthering his education.

*Sentencing hearing*

At the sentencing hearing, defendant acknowledged he is a drug addict. He testified that he had been sent to a drug program in the early 1980's. He did not complete it. He was asked to leave after an argument because he had an attitude problem. He had not tried to check himself into a program. "I thought I would be able to do it on my own and I couldn't."

During defendant's recent incarceration he had been pursuing educational programs, drug programs, and domestic violence programs. He acknowledged he had attended similar programs before. What has changed now is that he has "met God."

Defendant's sister Carmelita testified that she prays with defendant now. She has seen him change. He is welcome to stay with her.

The trial court denied defendant's request to strike his strikes, explaining in part: "Mr. Martinez, from everything I have observed, when you're in custody, when you're sober, you're a fine person, you're a likable person, what I saw here I liked, but that isn't the issue. The real issue is what you do when you're on the street and what you do when you use.

"I know that you believe that you're not going to use again. I know that you are going to do everything you can to not use again. Unfortunately, at some point society says we can't take another chance. We can't take another chance with someone who uses and does violence.

"For me, I'm always willing to look at someone who simply is an addict and try to figure out is this someone who has seen the light, but when it's someone who has violence in their past and even their present, who puts other people at risk[,] I have an obligation to society as a whole" to enforce the Three Strikes law and protect the public.

CRUEL OR UNUSUAL PUNISHMENT

██ Defendant contends that his sentence of life imprisonment with a minimum term of 25 years violates the state constitutional prohibition of

cruel or unusual punishment. (Cal. Const., art. I, § 17.)[5] Defendant recognizes that the federal Constitution affords no greater protection than the state Constitution and he makes no separate federal argument.

■ *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921] prescribed three "techniques" for assessing whether punishment is cruel or unusual. In order to determine if a punishment "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity" (*id.* at p. 424, fn. omitted), courts should (1) consider "the nature of the offense and/or the offender" (*id.* at p. 425), (2) compare the punishment to other punishments imposed by the same jurisdiction for more serious offenses (*id.* at p. 426) and (3) compare the punishment to other punishments imposed by other jurisdictions for the same offense (*id.* at p. 427).

## A. *Nature of Offense and Offender*

■ We first consider the nature of the offense and the offender. Regarding the offense, we should evaluate "the totality of the circumstances surrounding the commission of the offense in the case at bar, including such factors as its motive, the way it was committed, the extent of the defendant's involvement, and the consequences of his acts." (*People* v. *Dillon* (1983) 34 Cal.3d 441, 479 [194 Cal.Rptr. 390, 668 P.2d 697].) We also focus on the particular offender's "individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." (*Ibid.*)

■ Focusing on the facts of this case, we acknowledge that simple possession of a small quantity of methamphetamine is a crime that can be treated as either a felony or a misdemeanor. (Health & Saf. Code, § 11377, subd. (a).) This is also true of the crime of attempting by threat to deter an executive officer from carrying out his or her duty. (§ 69.) Both are "wobblers." Neither crime is among the felonies identified by the Legislature as serious. (§ 1192.7, subd. (c).)

On the other hand, defendant's current offenses were dangerous because he was also engaged in driving under the influence of alcohol and phencyclidine. This could pose a risk of death or serious bodily injury, as defense counsel acknowledged at sentencing.

In any event, the current crimes alone are not what has earned defendant a life sentence. He is a frequent repeat offender who seemingly has not

---

[5] Article I, section 17, of the California Constitution states in pertinent part: "Cruel or unusual punishment may not be inflicted."

learned from past incarceration. At sentencing he acknowledged that in the past dozen years he had averaged about 45 days between leaving jail and being arrested again.

Defendant portrays himself as a drug addict and a victim of drugs. The record demonstrates defendant has had lifelong problems with alcohol and drugs. However, drug addiction is not necessarily regarded as a mitigating factor when a criminal defendant has a long-term problem and seems unwilling to pursue treatment. (Compare *People* v. *Simpson* (1979) 90 Cal.App.3d 919, 926-928 [154 Cal.Rptr. 249] with *People* v. *Regalado* (1980) 108 Cal.App.3d 531, 538-540 [166 Cal.Rptr. 614] and *People* v. *Reyes* (1987) 195 Cal.App.3d 957, 960-964 [240 Cal.Rptr. 752], and cases there cited.) It is notable that defendant appears to have become seriously committed to seeking treatment after incarceration on charges carrying a life term. Defendant's upbringing and learning disabilities are unfortunate, but the law still holds such an individual responsible for his or her behavior.

Defendant contends that his prior serious felonies, robbery and assault with personal use of a screwdriver, did not involve physical injury. However, these felonies were serious felonies involving express and implicit threats of violence by defendant. Defendant also has misdemeanor convictions for assault, battery, and exhibiting a deadly weapon. The record indicates that defendant has been prone to violence or the threat of violence. One of his current crimes involved such a threat. He warned the arresting officer that he would see him on the streets.

Defendant relies on *In re Rodriguez* (1975) 14 Cal.3d 639 [122 Cal.Rptr. 552, 537 P.2d 384], where the California Supreme Court found cruel and unusual a life sentence for lewd conduct with a child. The court noted that the "method of its commission involved no violence and caused no physical harm to the victim. The episode lasted only a few minutes. No weapon was involved." (*Id.* at pp. 654-655.) Having in mind the 26-year-old defendant's past history of sex crimes (*id.* at p. 644, fn. 6), the court concluded that the defendant posed no "danger to society sufficient to justify such a prolonged period of imprisonment." (*Id.* at p. 655, fn. omitted.)

*Rodriguez* can be distinguished on several grounds. Here defendant has resorted to weapons and he has a much longer history of criminality. *Rodriguez* did not involve a recidivist statute.

California appellate courts have adopted the reasoning of *Rummell* v. *Estelle* (1980) 445 U.S. 263 [100 S.Ct. 1133, 63 L.Ed.2d 382] in upholding life sentences for third strike offenders. (*People* v. *Ingram* (1995) 40

Cal.App.4th 1397, 1415 [48 Cal.Rptr.2d 256] [Fifth District], disapproved on another ground by *People* v. *Dotson* (1997) 16 Cal.4th 547, 560, fn. 8 [66 Cal.Rptr.2d 423, 941 P.2d 56]; *People* v. *Kinsey* (1995) 40 Cal.App.4th 1621, 1630-1631 [47 Cal.Rptr.2d 769] [Second District, Division Seven]; *People* v. *Ayon* (1996) 46 Cal.App.4th 385, 399 [53 Cal.Rptr.2d 853] [Fourth District, Division One], disapproved on another ground by *People* v. *Deloza* (1998) 18 Cal.4th 585, 600, fn. 10 [76 Cal.Rptr.2d 255, 957 P.2d 945].) In *Rummell*, the United States Supreme Court upheld a life sentence for a repeat offender after a felony conviction of receiving $121 by false pretenses, with one prior felony conviction for credit card fraud worth $80 and another prior felony conviction for forging a $28 check. (445 U.S. at pp. 265-266 [100 S.Ct. at pp. 1134-1135].) The court reasoned that society is warranted in imposing increasingly severe penalties on those who repeatedly commit felonies. If increased penalties do not deter the repeat offender, then society is warranted in segregating that person for an extended period of time. (*Id.* at pp. 284-285 [100 S.Ct. at pp. 1144-1145].)

In considering the nature of the offender, we conclude that defendant's recidivism warrants lengthy incarceration. (Cf. *People* v. *Cartwright* (1995) 39 Cal.App.4th 1123, 1136 [46 Cal.Rptr.2d 351]; *People* v. *Ingram, supra,* 40 Cal.App.4th 1397, 1414-1416; *People* v. *Cooper* (1996) 43 Cal.App.4th 815, 825-826 [51 Cal.Rptr.2d 106]; *People* v. *Goodwin* (1997) 59 Cal.App.4th 1084, 1094 [69 Cal.Rptr.2d 576]; *People* v. *Cline* (1998) 60 Cal.App.4th 1327, 1338 [71 Cal.Rptr.2d 41].)

### B. *Comparing Other California Punishments for More Serious Offenses*

■ Defendant argues that his sentence is longer than if he were convicted of voluntary manslaughter. He makes the comparison to a first-time offender.

We have already explained that it is proper to punish a repeat offender more severely than a first-time offender. The proper comparison would be to a recidivist killer, whose punishment would be the same as defendant's. (*People* v. *Cartwright, supra,* 39 Cal.App.4th 1123, 1136-1137; *People* v. *Ingram, supra,* 40 Cal.App.4th 1397, 1416.)

### C. *Comparing Other States' Punishments for the Same Offense*

■ Defendant's major argument about disproportionality is that a life sentence for a nonviolent felony after two prior serious felonies is virtually unknown in the United States.

No published California case has attempted a definitive study comparing the recidivist statutes across the United States. Because of this, defendant

criticizes the published appellate opinions cited above, which have upheld life terms under the Three Strikes law as not cruel or unusual. For example, *People* v. *Cooper, supra,* 43 Cal.App.4th 815, simply accepted the defendant's argument that for a third strike of being a felon in possession of a handgun, in other states "[t]he terms run from less than a year to up to 20 or 30 years, with the majority of jurisdictions imposing terms of 5 years or less." (*Id.* at p. 826.) In evaluating defendant's claims about other states, we find that most states, but not all, make some provision for increasing the punishment for a recidivist felon, often termed a "persistent" or "habitual" offender.

In a number of states, the longest prison sentences are imposed only on repeat offenders whose current felony conviction is regarded as violent or serious. (E.g., Ark. Code Ann. § 5-4-501(c)(1) [40-year minimum for second serious violent felony]; Colo. Rev. Stat. § 16-13-101 [life for third serious or violent felony; treble maximum term for other felonies]; Conn. Gen. Stat. § 53a-40 [possible life imprisonment for third dangerous felony]; Del. Code Ann. tit. 11, § 4214(b) [life imprisonment for third serious felony]; Ga. Code Ann. § 17-10-7(b) [life without parole for second serious violent felony]; Ill. Comp. Stat. Ann. § 5/33B-1 [life for third serious felony]; Ind. Code Ann. § 35-50-2-8.5 [life without parole for third serious felony]; Neb. Rev. Stat. § 29-2221(1)(a), (b) [25-year minimum when third offense and 1 prior are both serious]; Nev. Rev. Stat. § 207.010 [life for violent felony after 3 prior felony convictions]; Pa. Cons. Stat. § 42-9714 [25-year minimum term for third violent felony]; Va. Code Ann. § 19.2-297.1 [life for third violent felony]; Wash. Rev. Code Ann. §§ 9.94A.030(27), 9.94A.120(4)[6] [life without parole for third serious felony]; Wis. Stat. Ann. § 939.62(2m) [life imprisonment without parole for third serious felony]; Wyo. Stat. Ann. § 6-10-201 [10-year minimum after violent felony with 2 prior felony convictions].)

In some states, simple possession of a small quantity of methamphetamine is a misdemeanor, so it does not trigger the punishment provided for a repeat felon. (E.g., Del. Code Ann. tit. 16, § 4754(a); N.Y. Penal Law § 220.03; S.C. Code Ann. § 44-53-370(c) & (d); Tenn. Code Ann. § 39-17-418; Vt. Stat. Ann. tit. 18, § 4234(a)(1); W.Va. Code § 60A-4-401(c); Wis. Stat. § 961.41(3g)(d).) In Florida, possession of a controlled substance, though a felony, is specifically exempt from enhanced punishment for prior felony convictions. (Fla. Stat. Ann. § 775.084(1)(a)(b)(3).)

In several other states where a subsequent felony is subject to enhanced recidivist punishment, the sentences are significantly shorter than 25 years to

[6]Defendant cites Washington Revised Code Annotated section 9.92.090, but it does not apply to crimes committed after July 1, 1984. (Wash. Rev. Code Ann. § 9.92.900.).

life. In Idaho, a third felony conviction requires a sentence between 5 years and life. (Idaho Code § 19-2514.) In Montana, a third felony conviction requires a sentence between 10 and 100 years. (Mont. Code Ann. § 46-18-502(2).) In Nebraska, a third felony conviction requires a sentence between 10 and 60 years. (Neb. Rev. Stat. Ann. § 29-2221(1).) In New Hampshire, a third felony conviction authorizes a sentence between 10 and 30 years. (N. H. Rev. Stat. Ann. § 651:6I(c), II(a).)

In all the states discussed above, defendant would have either been exempt from recidivist punishment or possibly subject to a significantly shorter sentence. But there are some states that would have imposed comparable punishment. Louisiana requires life imprisonment without parole when the current felony or either of the two prior convictions was a violent felony or another specified felony. Louisiana provides a 10-year washout period for prior felonies, which excludes time in prison. (La. Rev. Stat. Ann. § 15:529.1A(b)(ii), C.)[7] Oklahoma requires a 20-year minimum for a third felony. Oklahoma also provides for a 10-year washout period for prior felonies. (Okla. Stat. tit. 21, § 51B.)[8] In contrast, California's Three Strikes statute contains no washout period.[9]

Mississippi requires life imprisonment without parole for a third felony if any of the felonies was a crime of violence. Mississippi requires the defendant to have served prison time for each prior conviction that was brought and

---

[7]Louisiana Revised Statutes Annotated section 15:529.1 provides in part: "If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence." (Subd. A(1)(b)(ii).)

"C. This section shall not be applicable in cases where more than ten years have elapsed since the expiration of the maximum sentence or sentences of the previous conviction, or adjudication or adjudications of delinquency, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods."

[8]Title 21 of the Oklahoma Statutes, section 51, provides in part: "B. Every person who, having been twice convicted of felony offenses, commits a third, or thereafter, felony offenses within ten (10) years of the date following the completion of the execution of the sentence, shall be punished by imprisonment in the State Penitentiary for a term of not less than twenty (20) years. Felony offenses relied upon shall not have arisen out of the same transaction or occurrence or series of events closely related in time and location."

[9]In fact, section 1170.12, subdivision (a)(3) states: "The length of time between the prior felony conviction and the current felony conviction shall not affect the imposition of sentence."

tried separately. (Miss. Code Ann. § 99-19-83.)[10] While California's statute does not have this requirement,[11] in fact defendant has served prison time for two of his prior strikes.

Rhode Island provides for a 25-year enhancement to the sentence for a third felony conviction. (R. I. Gen. Laws § 12-19-21(a).)[12] We observe that the Rhode Island enhancement is not mandatory, but discretionary. (*State* v. *Sitko* (R.I. 1983) 457 A.2d 260, 261.) West Virginia provides for a life sentence for a third felony conviction. (W. Va. Code § 61-11-18(c).)[13] West Virginia and Mississippi courts routinely conduct proportionality review of life sentences and find them appropriate only when crimes of violence are involved. (*State* v. *Miller* (1990) 184 W.Va. 462 [00 S.E.2d 897, 900] *State* v. *Davis* (1993) 189 W.Va. 59 [27 S.E.2d 754, 756-757] *Ashley* v. *State* (Miss. 1989) 538 So.2d 1181, 1185.)

Defendant argues that "[s]ome states' recidivist statutes, which appear on their face to be as draconian as California's, in actual practice, are not enforced as rigidly as is California's." He contends that "California sentencing courts have little function aside from mathematically computing the defendant's sentence." This is not so. The statute is not absolutely mandatory. Trial courts retain authority under section 1385 to strike strikes "in furtherance of justice," as informed by the spirit of the Three Strikes statute. (*People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497, 504, 529-530 [53 Cal.Rptr.2d 789, 917 P.2d 628]; *People* v. *Williams* (1998) 17 Cal.4th 148, 160-161 [69 Cal.Rptr.2d 917, 948 P.2d 429].)

---

[10]Mississippi Code Annotated section 99-19-83, provides: "Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation."

[11]A prior felony conviction can qualify as a strike though sentence was suspended (§ 1170.12, subd. (b)(1)(B)) or stayed (§ 1170.12, subd. (b)(1)(A)).

[12]Rhode Island General Laws section 12-19-21(a), provides in part: "If any person who has been previously convicted in this or any other state of two or more felony offenses arising from separate and distinct incidents and sentenced on two or more such occasions to serve a term in prison shall, after the convictions and sentences, be convicted in this state of any offense punished by imprisonment for more than one year, such person shall be deemed an 'habitual criminal.' Upon conviction, the person deemed a habitual criminal shall be punished by imprisonment in the adult correctional institutions for a term not exceeding twenty-five (25) years, in addition to any sentence imposed for the offense of which he or she was last convicted."

[13]West Virginia Code, section 61-11-18(c), provides: "When it is determined . . . that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the penitentiary for life."

The above review of our country's recidivist statutes reveals that California is among the few states that impose a life sentence for a third felony conviction that is neither violent nor serious where at least one prior crime involved violence. While there are differences noted above, it may be said that California is not as harsh as Louisiana and Mississippi, which impose life without parole. California provides for a 25-year minimum term. (*People v. Stofle* (1996) 45 Cal.App.4th 417, 421 [52 Cal.Rptr.2d 829].)

■ The assumption underlying an interjurisdictional comparison "is that the vast majority of those jurisdictions will have prescribed punishments for this offense that are within the constitutional limit of severity; and if the challenged penalty is found to exceed the punishments decreed for the offense in a significant number of those jurisdictions, the disparity is a further measure of its excessiveness." (*In re Lynch, supra,* 8 Cal.3d at p. 427.)

■ Defendant contends that California's recidivist statute is unconstitutional because it is among the most extreme in the nation. That California's punishment scheme is among the most extreme does not compel the conclusion that it is unconstitutionally cruel or unusual. This state constitutional consideration does not require California to march in lockstep with other states in fashioning a penal code. It does not require "conforming our Penal Code to the 'majority rule' or the least common denominator of penalties nationwide." (*People v. Wingo* (1975) 14 Cal.3d 169, 179 [121 Cal.Rptr. 97, 534 P.2d 1001].) Otherwise, California could never take the toughest stance against repeat offenders or any other type of criminal conduct.

"[T]he needs and concerns of a particular state may induce it to treat certain crimes or particular repeat offenders more severely than any other state. . . . [¶] Whether a particular punishment is disproportionate to the offense is a question of degree. The choice of fitting and proper penalty is not an exact science but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will. In some cases, leeway for experimentation may be permissible. Thus, the judiciary should not interfere in the process unless a statute prescribes a penalty ' "out of all proportion to the offense." ' " (*People v. Cooper, supra,* 43 Cal.App.4th at p. 827, quoting *In re Lynch, supra,* 8 Cal.3d at pp. 423-424.)

We have detailed defendant's extensive criminal history above (beginning on page 1507). A number of his 50 misdemeanor convictions and 6 felony convictions have involved drugs and alcohol, with some also involving

violence or the threat of violence. The frequency of his recidivism outweighs his late efforts at reform. We conclude that to imprison defendant for life with a minimum term of 25 years does not "shock the conscience" on this record. Defendant's sentence is not cruel or unusual under the state Constitution.

DISPOSITION

The judgment is affirmed.

Wunderlich, J., and Mihara, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 25, 1999. Mosk, J., and Kennard J., were of the opinion that the petition should be granted.