Filed 8/27/13  P. v. Coneal CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LATHAN ALLEN CONEAL,<br><br>    Defendant and Appellant. | H037716<br>(Santa Clara County<br>Super. Ct. No. CC960238) |

A jury convicted defendant Lathan Allen Coneal of residential burglary (Pen. Code, §§ 459, 460)[1] and found he had committed two previous serious or violent felonies (§ 667, subd. (e)(2)).  The trial court sentenced defendant to a total of 35 years to life in prison pursuant to California's "Three Strikes" law,[2] consisting of 25 years to life for committing a third felony, consecutive to two determinate terms of five years each for his previous serious or violent felonies.  (§ 667, subds. (a), (e)(2)(A)(ii).)  Defendant challenges his sentence, arguing it constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and cruel or unusual punishment in violation of article I, section 17 of the California Constitution.  He also challenges the imposition of a restitution fine, a criminal justice administration fee, and

---

[1]  Unspecified statutory references are to the Penal Code.

[2]  Section 667, subdivision (e)(2)(A)(ii), states, in relevant part: "[I]f a defendant has two or more prior serious and/or violent felony convictions as defined in subdivision (d) that have been pled and proved, the term for the current felony conviction shall be an indeterminate term of life imprisonment with a minimum term of [¶] . . . (ii) . . . 25 years."

an order that he pay victim restitution. For the reasons stated here, we will affirm the lower court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the early morning of November 3, 2009, defendant burglarized a townhouse on Cypress Point Court in San Jose. At the time, John Kapelowitz and Diane Roberge lived in the house and were sleeping in separate bedrooms on the second floor. Roberge awoke when she felt someone bump the side of her bed. She looked up and saw defendant crouched on the opposite side of her bed with just the top of his head visible. Realizing a stranger was in her room, Roberge began screaming as loud as she could and defendant put his hands out, motioned, and said "don't scream." Defendant then bent down, picked up something Roberge later confirmed was her laptop, and fled.

Kapelowitz woke up at the sound of Roberge's screaming and quickly went to Roberge's room. After calling the police, Kapelowitz surveyed the townhouse to see what was missing. He discovered his laptop computer and its case were missing, as well as his Blackberry cellular phone and Roberge's laptop. He also noticed one black glove that he did not recognize near the stairs on the first floor.

Meanwhile, San Jose Police Department Officer Steven Valentine was responding to another call in the area when he heard a blood curdling scream and went on foot in the direction of the scream. As he walked, Officer Valentine noticed defendant walking briskly from an alley. Defendant was the only person in sight and had a glove on one of his hands.

As defendant attempted to enter another residence, Officer Valentine identified himself as a police officer and told defendant to stop. At that point, defendant threw several items, including a laptop, into some bushes and ran. Officer Valentine pursued on foot until defendant climbed over a fence and out of view.

Officer Valentine and other officers eventually found defendant in an attic after noticing a missing vent grate on the side of a residence. Police also found one black

glove and a black beanie in the attic where defendant was hiding. When the officers searched defendant, they found a battery for a Blackberry cellular phone.

The police ultimately recovered both laptop computers as well as a laptop case, but only the laptop belonging to Kapelowitz still functioned. The Blackberry cellular phone was never recovered. Testing revealed defendant's DNA on both the glove found at the location of the burglary and the glove found in the attic where he was arrested. After the jury convicted defendant of residential burglary and found the existence of two prior strikes, the trial court sentenced defendant to 35 years to life in prison. The court also ordered defendant to pay a $10,000 restitution fine (§ 1202.4), $2,600 in restitution to Roberge for computer repairs and replacement, $639 in restitution to Kapelowitz for his Blackberry phone, a $129.75 criminal justice administration fee (Gov. Code, §§ 29550, 29550.1, 29550.2), as well as other fees not at issue on appeal.

## II.     DISCUSSION

We will divide our discussion between defendant's constitutional claims and the claims relating to fines and restitution.

### A.     SENTENCE OF 35 YEARS TO LIFE

Defendant challenges his sentence under both the United States and California Constitutions.

#### 1.     Eighth Amendment Prohibition of Cruel and Unusual Punishment

The Eighth Amendment prohibits "cruel and unusual punishments." (U.S. Const., 8th Amend.) When reviewing non-capital sentences to determine whether the sentence is cruel and unusual, we ask whether the sentence is "grossly disproportionate" to the crime. (*Lockyer v. Andrade* (2003) 538 U.S. 63, 73.) Federal courts look to the following criteria to assist with this determination: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."

(*Solem v. Helm* (1983) 463 U.S. 277, 292.) A sentence will only be found grossly disproportionate in " 'exceedingly rare' and 'extreme' case[s]." (*Lockyer*, *supra*, 538 U.S. at p. 73, quoting *Harmelin v. Michigan* (1991) 501 U.S. 957, 1001 (conc. opn. of Kennedy, J.).)

The United States Supreme Court has previously addressed and rejected an Eighth Amendment claim related to an individual sentenced to an indeterminate term of 25 years to life under California's Three Strikes law in *Ewing v. California* (2003) 538 U.S. 11 (*Ewing*). There, the jury convicted the defendant of felony grand theft for stealing three golf clubs with a total value of $1,197. *(Id.* at pp. 17-18 (plur. opn. of O'Connor, J.).) Because of previous serious or violent felonies, the trial court applied the Three Strikes law and sentenced the defendant to 25 years to life in prison. *(Id.* at p. 20.) In affirming the defendant's sentence, Justice O'Connor's plurality opinion discussed recidivist statutes generally and California's Three Strikes law specifically, noting that " '[s]tates have a valid interest in deterring and segregating habitual criminals.' " *(Id.* at p. 25, quoting *Parke v. Raley* (1992) 506 U.S. 20, 27.)

Focusing on the first criterion, assessing the gravity of the offense and the harshness of the penalty, the *Ewing* court noted that while the theft of three golf clubs might seem trifling, their value was not insignificant. *(Ewing, supra,* 538 U.S. at p. 28.) The Court further observed that harshness cannot be determined in the vacuum of the most recent offense, but rather must be viewed in the context of a "long history of recidivism." *(Id.* at p. 29.) When viewed in that light, the plurality found no gross disproportionality. The Court found the sentence to be justified both by the defendant's recidivism and California's public safety interest in incapacitating and deterring recidivists. *(Id.* at pp. 29-30.) While California's Three Strikes law resulted in lengthy prison sentences, it reflected "a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated." *(Id.* at p. 30.) Because the plurality found no inference

of disproportionality, it affirmed the defendant's sentence and did not address the other two criteria.

Turning to the seriousness of defendant's offense here, the jury convicted him of first degree (residential) burglary (§ 460 [burglary of "inhabited dwelling house" is of the first degree]). Because non-accomplices were present in the townhouse when the burglary occurred, the offense was per se "serious" and "violent." (§ 1192.7, subd. (c)(1)(18); § 667.5, subd. (c)(21).) The jury also found defendant had two prior felony convictions for residential burglary, both meeting the statutory criteria for serious and violent felonies.

Though defendant stresses no one was physically injured during his most recent burglary, there was a high risk of harm because the townhouse was occupied, with defendant found inside one victim's bedroom. While there was no physical injury, the trial court noted the victims suffered "real and enduring psychological harm" as a result of the intrusion into their home. Regarding the harshness of defendant's sentence, we note the sentence reflects not only this burglary but two previous convictions for the same crime. Moreover, the lower court observed that the latest burglary was more serious than the previous ones because there was a greater level of planning and sophistication in its execution. Based on a consistent history of recidivism, the trial court imposed the sentence of 35 years to life because incapacitation appeared to be the only effective method of preventing defendant from re-offending. Just as the plurality recognized in *Ewing*, *supra*, 538 U.S. at p. 25, the sentence in this case furthers California's legitimate interest in deterring and segregating habitual criminals. On these facts, we find no gross disproportionality between defendant's conviction and his sentence.

Because we find no inference of disproportionality, we follow the practice of the plurality in *Ewing* and do not address the other two criteria.

## 2. Article I, Section 17 Prohibition of Cruel or Unusual Punishment

Article I, section 17, prohibits "cruel or unusual punishment." (Cal. Const., art. I, § 17.) California courts also use a three-factor test to determine whether punishment "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.) To determine defendant's claim, we analyze: (1) the nature of the offense and the offender; (2) defendant's sentence compared with the punishment for different offenses in California; and (3) defendant's sentence compared with the punishment for similar offenses in other jurisdictions. (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1510.)

Our view of the offense and the offender is similar to our preceding Eighth Amendment analysis and does not favor defendant. The jury convicted defendant of residential burglary, a serious and violent felony, and found he had two prior strike convictions for the same crime. The fact that a residential burglary is deemed per se serious and violent reflects the Legislature's understanding of the potential for violence inherent in the offense. (*People v. Hughes* (2002) 27 Cal.4th 287, 355 [noting burglary laws recognize danger to personal safety created by risk that intruder will harm occupants as well as risk that occupants will react violently to the invasion].) As we discuss above, despite the absence of physical injuries, the lower court found the victims suffered ongoing psychological harm as a direct result of defendant's crime. The trial court also considered defendant's drug use described in the probation officer's report, but concluded that while drug and alcohol addiction can be a mitigating factor in some cases, it did not mitigate defendant's conduct here because of his "repeated failure to take action to deal with his alleged addiction[.]" (See *Martinez*, *supra*, 71 Cal.App.4th at p. 1511 ["drug addiction is not necessarily regarded as a mitigating factor when a criminal defendant has a long-term problem and seems unwilling to pursue treatment"].) From this, we conclude the nature of defendant and his offense supported his sentence.

As to the second factor, comparing defendant's sentence with the punishments for other offenses, defendant compares in isolation the sentence for his most recent offense to crimes that carry heavier sentences, such as first degree murder, which carries an indeterminate sentence of 25 years to life. (§ 190, subd. (a).) However, the proper comparison must include "not only his current offenses, but also his recidivism." (*People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1136; see also *People v. Sullivan* (2007) 151 Cal.App.4th 524, 571.) For example, in *Martinez*, *supra*, 71 Cal.App.4th at p. 1512, the defendant had prior strike convictions for assault with a deadly weapon, robbery, and attempted robbery. He compared his Three Strikes life sentence for methamphetamine possession and interference with an executive peace officer to that of a first-time offender convicted of voluntary manslaughter, urging that the latter would receive a shorter sentence. The *Martinez* court noted that the proper comparison is to a "recidivist killer" whose punishment would be the same as the defendant's under California's Three Strikes law. (*Ibid.*) Similarly here, the proper comparison is to an offender with two strikes who, like defendant, commits an additional serious or violent felony. Because that third felony would trigger the same sentence defendant received for his current burglary conviction, this factor demonstrates proportionality.

Defendant focuses particularly on the third *Martinez* factor, namely that his sentence in California is far greater than what he would receive in other states for the same offense. Defendant argues other states impose indeterminate life sentences only for aggravated felonies, while California allows a life sentence for any third felony.[3] Defendant also notes that states such as Louisiana and Oklahoma have "washout" periods after which prior felonies do not count against a defendant for strike purposes. He argues

---

[3] Proposition 36, approved by voters in November 2012 after the filing of defendant's opening brief, limits the application of California's Three Strikes law to individuals like defendant, whose third strike is serious or violent. (See § 667, subd. (e)(2)(C) [defining lesser penalty when third felony conviction is not serious or violent].)

this supports a finding that his sentence was cruel or unusual. However, this court has previously acknowledged this practice in other states and nonetheless affirmed a sentence under the Three Strikes law. (*Martinez*, *supra*, 71 Cal.App.4th at pp. 1514-1517.)

Finally, defendant points to other states' sentencing schemes for habitual offenders and argues they are more lenient for various reasons, including lower maximum sentences, lower mandatory minimums, and earlier parole eligibility. These same claims were considered and rejected in *Martinez* after an exhaustive review of the sentencing regimes in other states. (*Martinez*, *supra*, 71 Cal.App.4th at pp. 1512-1516.) The *Martinez* court noted California is actually more lenient than other states in certain respects. For example, California's Three Strikes law allows for the possibility of parole, while antirecidivism laws in other states such as Louisiana and Mississippi do not. (*Id.* at p. 1516.) The court also reasoned California's law is not as draconian as others because section 1385, subdivision (a), empowers trial courts to strike prior felonies "in furtherance of justice," as informed by the spirit of the Three Strikes statute. (*Martinez, supra,* at p. 1515, citing *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504, 529-530.) While the court recognized California's Three Strikes scheme is one of the strictest in the nation, it noted the Legislature need not conform to the laws of other states and has broad authority to set sentences. (*Martinez, supra,* at p. 1516; see also *Ewing*, *supra*, 538 U.S. at p. 22 [" 'courts should be reluctant to review legislatively mandated terms of imprisonment, and . . . successful challenges to the proportionality of particular sentences should be exceedingly rare.' "], quoting *Hutto v. Davis* (1982) 454 U.S. 370, 374.)

We find the reasoning of *Martinez* persuasive and conclude this third factor does not support defendant's argument. Because we do not find defendant's sentence excessive, the mere fact that his sentence might be harsher under California law is unavailing.

Based on the foregoing reasons, we find defendant's sentence was not cruel or unusual.

## B.    RESTITUTION FINE (§ 1202.4, SUBD. (B))

Defendant challenges the imposition of a $10,000 restitution fine based on a failure to consider defendant's ability to pay. Defendant relies on *Southern Union Co. v. United States* (2012) 567 U.S. __, 132 S.Ct. 2344 (*Southern Union*), to argue that the determination of facts affecting the restitution fine amount should have been decided by a jury. Alternatively, defendant argues that, to the extent his claims are forfeited, his trial counsel provided ineffective assistance.

At the time of defendant's sentencing, section 1202.4, subdivision (b), required the trial court to impose a restitution fine between $200 and $10,000[4] in every felony case unless "compelling and extraordinary reasons" exist for not doing so. (Former § 1202.4, subd. (b).) While a defendant's inability to pay can be considered when increasing a fine beyond the statutory minimum, it "shall not be considered a compelling and extraordinary reason not to impose a restitution fine." (§ 1202.4, subd. (c).) When determining the amount of the fine, the court must consider "any relevant factors, including, but not limited to, the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered losses [tangible or intangible] as a result of the crime, and the number of victims involved in the crime." (§ 1202.4, subd. (d).) The court need not conduct a separate hearing to determine the fine, nor make express findings regarding the factors considered in

---

[4] Section 1202.4, subdivision (b)(1) presently calls for the imposition of a felony restitution fine between $280 and $10,000 and the minimum will increase to $300 as of January 1, 2014. (§ 1202.4, subd. (b)(1).)

determining the fine.  (*Ibid.*)  Indeed, the court may determine the amount of the fine by formula.  (§ 1202.4, subd. (b)(2).)[5]

## 1.     Forfeiture and *Southern Union Co. v. United States* **(2012) 567 U.S. __**

We agree with the People that defendant forfeited most claims on this point by failing to object during sentencing.  (See *People v. Nelson* (2011) 51 Cal.4th 198, 227.)  We will, however, consider defendant's claim based on *Southern Union* because that case was decided after his sentencing hearing.

In *Apprendi v. New Jersey* (2000) 530 U.S. 466, the United States Supreme Court held that a jury must decide beyond a reasonable doubt any fact that increases a criminal penalty beyond a statutory maximum.  *(Id.* at p. 490.)  In *Southern Union*, the Court extended the *Apprendi* rule to monetary fines.  (*Southern Union*, *supra*, 567 U.S. at p. __ [132 S.Ct. at pp. 2352, 2357].)  Defendant argues the jury should have decided the amount of the restitution fine because it increased his sentence.  This argument was recently addressed and rejected by the Second District in *People v. Kramis* (2012) 209 Cal.App.4th 346, 351-352.  In *Kramis*, the court explained that *Apprendi* and *Southern Union* do not apply unless a court imposes a penalty that *exceeds* a statutory range.  *(Id.* at p. 351.)  Because the trial judge imposed a $10,000 fine in *Kramis*, the court held the fine was within the statutory range, did not implicate *Apprendi* or *Southern Union*, and therefore did not need to be decided by a jury.  *(Id.* at pp. 351-352.)

Like the fine in *Kramis*, the trial court here exercised discretion within the statutory range and imposed a $10,000 restitution fine.  Although the fine constitutes the statutory maximum, it does not exceed the maximum and *Southern Union* therefore does not apply.  Defendant's argument must fail.

---

[5]  Section 1202.4, subdivision (b)(2) allows the court to set the fine by multiplying the minimum fine under Section 1202.4, subdivision (b)(1), times the number of years of imprisonment, times the number of convicted felony counts.  (§ 1202.4, subd. (b)(2).)

## 2. Ineffective Assistance of Counsel

Defendant argues his trial counsel provided ineffective assistance by failing to object to the amount of the restitution fine based on defendant's inability to pay. To prevail, defendant must show both that his trial counsel's performance was deficient and that the deficiency prejudiced defendant. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.) To prove prejudice, defendant must affirmatively show a reasonable probability that, but for his trial counsel's errors, the result would have been different. *(Id.* at pp. 217-218.) A reasonable probability is one " 'sufficient to undermine confidence in the outcome.' " *(Id.* at p. 218, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 693-694.)

We need not determine whether trial counsel's failure to object was defective because even assuming counsel's deficient performance, defendant suffered no prejudice. Had defendant's counsel preserved an objection to the amount of the restitution fine, the amount of the fine would be subject to an abuse of discretion standard on appeal. (*Nelson*, *supra*, 51 Cal.4th at p. 227.) In reviewing the amount of the restitution fine, many factors in section 1202.4, subdivision (d), support the trial court's decision. Defendant's burglary was a serious offense and was but the latest crime in a long history of recidivism. The pecuniary impact to the victims from the loss of the laptop and cellular phone was substantial. And while the victims suffered no physical harm, the court found they suffered psychological harm as a result of the burglary. Based on these facts, it was not an abuse of discretion for the trial judge to impose a $10,000 restitution fine. Thus, defendant has not met his burden to show ineffective assistance of counsel.

## C. VICTIM RESTITUTION (§ 1202.4, SUBD. (F))

Defendant challenges the amount of victim restitution he was ordered to pay to Kapelowitz ($639) and Roberge ($2,600). Defendant first argues *Apprendi* and *Southern Union* require that the amount of victim restitution be determined by a jury. He also

argues the court abused its discretion in determining the amount of restitution. Pursuant to section 1202.4, subdivision (f), the court must order full restitution for any economic loss "based on the amount of loss claimed by the victim or victims or any other showing to the court."

Defendant's *Apprendi* claim fails because that line of cases applies only to facts affecting the imposition of "punishment." (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1184.) In *Chappelone*, the First District, encountering an identical claim, surveyed United States Supreme Court cases as well as California cases and concluded victim restitution did not constitute punishment because its primary purpose is to provide compensation to victims rather than to punish defendants. (*Ibid.*) That victim restitution might serve a secondary purpose of deterrence does not convert it into a form of punishment implicating the Sixth Amendment jury right. (*Ibid.*, citing *People v. Millard* (2009) 175 Cal.App.4th 7, 35-36.) We agree with the First District's reasoning and therefore find no Sixth Amendment violation.

Defendant next argues the trial court abused its discretion in setting the amount of victim restitution based solely on information from the probation report. We disagree. The contents of a probation report constitute " 'prima facie evidence of loss' " and, in the absence of any contrary information filed by defendant,[6] the trial court was allowed to rely on that report in setting the amount of victim restitution. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1319-1320, quoting *People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543.) For this reason, we find no abuse of discretion.

---

[6] A defendant has the right to a hearing to dispute the determination of the amount of restitution (Pen. Code § 1202.4, subd.(f)(1).). Although the record does not contain an explicit advisement or waiver of such a hearing, defendant does not allege that he was deprived of that opportunity.

**D.     CRIMINAL JUSTICE ADMINISTRATION FEE**

Defendant's final argument is that the trial court erred by imposing a criminal justice administration fee without determining defendant's ability to pay.  Disposition of this issue is controlled by the California Supreme Court's recent decision in *People v. McCullough* (2013) 56 Cal.4th 589, where the Court held a challenge to a criminal justice administration fee is forfeited if there is no objection in the trial court.  *(Id.* at p. 597.)  As we are bound by that decision, and because defendant did not object below, his argument is forfeited.

As for the People's request that we amend the sentencing minute order and abstract of judgment to conform to the oral order, review of the documents indicates they both reflect the oral order to pay a $129.75 criminal justice administration fee.  Thus, no amendment is necessary.

### III.      DISPOSITION

For the foregoing reasons, the judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Premo, Acting P.J.

_____

Mihara, J.