Filed 6/17/24  P. v. RamirezGutierrez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANIEL RAMIREZGUTIERREZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B327144<br>(Super. Ct. No. 22F-01654)<br>(San Luis Obispo County) |

Daniel RamirezGutierrez appeals from a judgment following a bench trial at which the court found him guilty of 14 counts of committing a lewd act upon a child (Pen. Code[1], § 288, subd. (a); counts 1-10, 16-19); two counts of forcible rape (§ 261, subd. (a)(2); counts 11-12); two counts of forcible oral copulation (§ 287, subd. (c)(2)(A); counts 13-14); and one count of sex or

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

sodomy with a child under 10 (§ 288.7, subd. (a); count 15). The court found true allegations regarding multiple victims and victims under the age of 14. (§ 667.61, subds. (b), (e), and (j)(2).)

The trial court imposed consecutive sentences totaling 435 years to life: 15 years to life for each of counts 11 through 14, and 25 years to life for each of the remaining counts.

Appellant contends his sentence violates state and federal prohibitions against cruel and unusual punishment. We disagree and will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Allison Doe*

Allison Doe, appellant's stepdaughter, was 12 years old at the time of trial. Allison's mother is Glenda. Allison met appellant when she was about three years old. Within a few months, appellant began touching Allison. The first instance she recalled was when appellant pulled out his penis and told her to touch it.

Sometimes appellant would take Allison's clothes off and touch her vagina and breasts with his hands. Appellant put his penis inside her vagina and used it to touch her butt. Penetration was painful. Once, when Allison woke up in bed, appellant was behind her naked. He removed her clothes and touched her vagina with his penis. Appellant had Allison touch his penis with her hands or mouth on multiple occasions.

Appellant would ask Allison if she liked it. He told her that she would be sent back to Honduras if she told anyone. Appellant would not let Allison speak to boys or participate in extracurricular activities at school. Allison eventually told a friend about appellant touching her. Subsequently, Allison spoke with a police officer.

### *Glenda Doe*

Allison's mother Glenda testified that appellant forced Glenda to have anal sex with him on more than one occasion. Appellant also forcibly put his penis in her mouth multiple times. Appellant forced Glenda to have vaginal sex with him many times. Appellant would use his body weight and hands to force sex. Before speaking to detectives, Glenda did not know her partner forcing her to be intimate was a crime. Once, appellant said he could have Glenda deported when she did not want to be intimate with him. Glenda did not see the harm appellant was causing her because she loved him.

### *Lysette Doe*

Appellant previously lived with Maria R., with whom he has a daughter, Lysette. Lysette was 16 years old at the time of trial. Appellant, Maria, and Lysette shared a bed when Lysette was about four years old. Before Lysette entered kindergarten, Maria took her to the doctor because she complained it hurt to pee. Lysette had bubbles or blisters on the sides of her labia.

Lysette testified appellant touched her in a way that made her uncomfortable. When she and appellant were lying down in the master bedroom, appellant would touch her waist, hips, legs, and thighs. He would "physically move [her] butt to his . . . crotch area." When no one else was home, appellant pulled down Lysette's pants and took off his own. He rubbed her vagina against his penis "until he got the pleasure that he needed." Appellant also attempted to put his penis into her butt, but she pushed him away. Lysette was about eight or nine years old. Appellant said he would not buy her a toy or ice cream if she told anyone.

*Emily Doe*

Emily Doe was Lysette's sister, but appellant was not Emily's father. The trial court found appellant not guilty of the counts related to appellant's alleged conduct against Emily. The court found Emily's testimony credible and compelling but "felt like the touching did not rise beyond a reasonable doubt to a 288 level."

DISCUSSION

Appellant argues his sentence of 435 years to life violates the state and federal prohibitions against cruel and unusual punishment. We disagree.

Under the California Constitution, a sentence constitutes cruel or unusual punishment if it is "'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" (*People v. Dillon* (1983) 34 Cal.3d 441, 478; Cal. Const., art. 1, § 17.) Deference to the Legislature "is an important element in any disproportionality analysis." (*In re Palmer* (2021) 10 Cal.5th 959, 972.) Three analytical techniques aid this deferential review: "(1) an examination of the nature of the offense and the offender, with particular attention to the degree of danger both pose to society; (2) a comparison of the punishment with the punishment California imposes for more serious offenses; and (3) a comparison of the punishment with that prescribed in other jurisdictions for the same offense." (*Id*. at p. 973.)

The trial court convicted appellant of 19 sexual offenses against three victims, two of whom were children at the time. Appellant sexually abused his biological daughter. Appellant also raped a mother whose daughter he repeatedly sexually abused. As the trial court noted, appellant "is a serial predator,"

4

and he plainly endangers society. Appellant's egregious conduct in this case dwarfs the mitigating impact of his minimal prior criminal history. (See *People v. Edwards* (2019) 34 Cal.App.5th 183, 192 [no cruel and unusual punishment for lengthy life sentences where defendants' minimal prior criminal history did not "outweigh the ruthlessness" of their attack].)

Appellant argues comparison to the punishment for murder shows his sentence is disproportional. He argues that had he "been convicted of three counts of first degree murder and the sentences were imposed consecutively, the sentence would be 75 years to life." However, convictions for three murders in the same proceeding would almost certainly be coupled with a true finding on the multiple murder special circumstance, elevating the exposure to life without the possibility of parole or death. (§ 190.2, subd. (a)(3).) Appellant's argument also ignores the fact that his sentence length stems largely from the multiplicity of his offenses. While each sexual offense may be less egregious than one murder, 19 sexual offenses can properly ground a sentence longer than is possible for three murders.

Appellant directs us to no jurisdiction with lesser punishment for similar offenses. Regardless, the state constitution "does not require California to march in lockstep with other states in fashioning a penal code. It does not require 'conforming our Penal Code to the "majority rule" or the least common denominator of penalties nationwide.'" (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1516.) Fundamentally, appellant's punishment is not so disproportionately harsh as to shock the conscience or offend notions of human dignity. Especially given the legislative deference we must afford, the punishment is not cruel or unusual under the state constitution.

Appellant cites the late Justice Mosk's criticism of sentences exceeding life expectancy. However, that criticism never became the law in California. (*People v. Deloza* (1998) 18 Cal.4th 585, 600-601 (conc. opn. of Mosk, J.); see also *People v. Hicks* (1993) 6 Cal.4th 784, 797 (dis. opn. of Mosk, J.).) California courts have repeatedly affirmed sentences exceeding the defendant's natural life. (See, e.g., *People v. Andrade* (2015) 238 Cal.App.4th 1274, 1309-1310 [195 years to life upheld]; *People v. Panighetti* (2023) 95 Cal.App.5th 978, 1000-1004 [280 years to life].) Such punishment promotes deterrence of potential offenders by unequivocally expressing society's intolerance of the punished behavior. "In practical effect, [appellant] is in no different position than a defendant who has received a sentence of life without possibility of parole: he will be in prison all his life." (*People v. Byrd* (2001) 89 Cal.App.4th 1373, 1383.) Appellant's life expectancy does not constrain his sentence.

Nor does appellant's sentence violate the Eighth Amendment ban on cruel and unusual punishment. (U.S. Const., 8th Amend.) The Eighth Amendment contains a "'narrow proportionality principle' that 'applies to noncapital sentences.'" (*Ewing v. California* (2003) 538 U.S. 11, 20 (lead opn. of O'Connor, J., joined by Rehnquist, C.J., and Kennedy, J.).) "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." (*Rummel v. Estelle* (1980) 445 U.S. 263, 272.) "There is considerable overlap in the state and federal approaches. 'Although articulated slightly differently . . . [t]he touchstone in each is gross disproportionality.'" (*People v. Baker* (2018) 20 Cal.App.5th 711, 733.)

The Eighth Amendment analysis begins with a comparison between the gravity of the offense and the severity of the sentence. (*Graham v. Florida* (2010) 560 U.S. 48, 60.) In the "'rare case'" this threshold comparison leads to an inference of gross disproportionality, "the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." (*Ibid*.) For reasons discussed above, appellant's case is not the rare situation in which an inference of gross disproportionality arises. Therefore, no Eighth Amendment violation exists.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

YEGAN, Acting P. J.

BALTODANO, J.

7

Craig B. Van Rooyen, Judge
Superior Court County of San Luis Obispo

_____

Verna Wefald, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Madeo and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.