Filed 6/24/14  P. v. Sida CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DEREK SIDA,<br><br>    Defendant and Appellant. | B248886<br><br>(Los Angeles County<br> Super. Ct. No. BA393693) |

APPEAL from a judgment of the Superior Court of Los Angeles County, C. H. Rehm, Judge.  Affirmed as Modified.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Derek Sida of three counts of attempted murder, finding true in each count the allegation that the attempted murder was willful, deliberate and premeditated (Pen. Code, §§ 664/187, subd. (a)),[1] that a principal discharged a firearm causing great bodily injury (§ 12022.53, subd. (e)(1)), and that the crimes were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)).[2] The trial court purported to sentence him to a total term of 75 years to life in prison, a sentence that reflects consecutive enhancements under section 12022.53, subdivision (e)(1), but fails to reflect the separate life terms applicable for each attempted murder conviction.

Defendant appeals, contending: (1) imposing three consecutive terms of 25 years to life for a principal's discharge of a firearm under section 12022.53, subdivision (e)(1) violates the prohibition against double jeopardy; (2) such consecutive enhancements are constitutionally excessive; and (3) he is entitled to additional presentence credits. We reject the first two contentions, agree with the third, and order the abstract of judgment corrected to reflect an additional day of actual credit. Defendant also asks that we review the sealed transcript of the trial court's in camera hearing under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531. We have done so and find no abuse of discretion. Finally, respondent contends that defendant's sentence is illegal, because it fails to reflect the separate life terms applicable for each count of attempted murder. We agree and order the abstract of judgment corrected. As amended, we affirm the judgment.

---

[1]     All further section references are to the Penal Code.

[2]     The jury found not true allegations that defendant personally discharged a firearm causing great bodily injury and that he used a firearm.

## BACKGROUND

On February 3, 2012, around 6:15 p.m., someone fired 10 bullets into a car driven by John Riccio, an 18th Street gang member, just after he parked at the College Hotel, a residential hotel located in the 4600 block of Santa Monica Boulevard in Los Angeles. Also in the car were Jack Eloyan and a third passenger. Riccio was struck in the shoulder. He screamed, stumbled from the car, and fell. Eloyan and the other passenger, who were not hit, helped him to room 103, where Gabby Cuevas, a friend of Riccio's, lived.

Los Angeles Police Officers Robert Chellew and Frank Zuniga responded to the scene and were directed to room 103, where they found Riccio screaming and bleeding from his shoulder. The officers made him lie down, applied pressure to the wound, and summoned an ambulance.

Officer Garrett Breegle canvassed the immediate area, including entering a nearby barbershop where he saw Rosa Carranza, defendant's girlfriend, whom Officer Breegle knew to be a member of the La Mirada Locos. Defendant, also a La Mirada Locos member, was in the rear of the shop, wearing a barber's smock and vigorously washing his hands and face in the sink.

Shortly thereafter defendant was taken into custody. Officer Justin Howarth asked defendant where a firearm was located. Defendant said that he did not shoot anyone or do anything. However, he asked to be taken to the station and said that he would feel more comfortable talking there.

At the Rampart station, after he was advised of and waived his *Miranda* rights, defendant provided a written statement to Officers Breegle and Howarth. In the statement, defendant said that before the shooting, he was at the barbershop with two other La Mirada Locos, G.O. and Monster. G.O. announced that he was going to "blast these fools." Defendant became nervous, and walked into the

3

barbershop parking lot, where he heard several gunshots. G.O. then ran up to him and gave him the gun. Defendant began running in the parking lot when Monster told him to give him the gun. Defendant did so. Monster got into his car with the gun and drove off. Defendant said that he had changed clothes and then washed his hands and face because he had held the gun and wanted to wash off any gunshot residue. He said that he did not know the true names of G.O. and Monster, and when shown a photograph of a La Mirada Locos member whose moniker was Monster, he said that it was a different Monster.

After being told that he was going to be arrested, defendant asked to speak to Officers Howarth and Breegle again. This time defendant provided essentially the same version, but changed the names of the others involved to Lil Kro (as the one who said he was going to "blast these fools") and Silent (as the one who took the gun from him). He said he did not know their true names. Officer Breegle had extensive knowledge of the La Mirada Locos and its members. He had never heard of anyone who went by the moniker Lil Kro, Silent, or G.O.

A few days after the shooting, Los Angeles Police Detective Ross Nemeroff viewed a surveillance video from a nearby liquor store (the tape had been destroyed prior to trial). The video showed a male, wearing a garment that appeared to have a hood (Detective Nemeroff speculated that it was a hooded sweatshirt) step to the curb, raise his arm, and then walk away. The person could not be identified from the video.

Detective Nemeroff went to the barbershop and found a black hooded sweatshirt hanging on a coat rack next to the sink where defendant had washed his hands and face. The barber, Marco Pantoja, did not know whose sweatshirt it was or how long it had been there. According to Pantoja, defendant had his hair cut at the shop and when he did not have enough to pay Pantoja would allow him clean

4

up the shop in exchange for a haircut. On the day of the shooting, defendant cleaned the bathroom. Defendant wore a smock when doing it. He had been at the shop about an hour before police arrived there.

According to Officer Howarth, who testified as the prosecution gang expert, the scene of the shooting was in the heart of La Mirada Locos territory. The 18th Street gang, to which Riccio belonged, is a rival of the La Mirada Locos. The primary activities of the La Mirada Locos include the commission of attempted murders, robbery, and vandalism. Officer Howarth specifically testified about three cases involving La Mirada Locos members: in one, a La Mirada Loco member was convicted of attempted murder on February 23, 2012; in the second, a member was convicted of robbery on July 13, 2011; and in the third another member was also convicted of robbery on April 27, 2012. In response to a hypothetical question based on the evidence of the instant shooting, Officer Howarth he testified that the shooting was committed to benefit the gang of those who participated.

## DISCUSSION

*Double Jeopardy*

Defendant was convicted of three counts of attempted murder, with a true finding on the allegation that the attempted murders were willful, deliberate, and premeditated. (§§ 664/187, subd. (a)). From the jury's finding that defendant did not personally discharge a firearm, it appears that the jury convicted him as an aider and abettor. The sentence for each of his attempted murder convictions is life in prison with the possibility of parole. (§ 664, subd. (a).)

In each count, the jury also found true the allegations that the attempted murders were committed for the benefit of a criminal street gang (§ 186.22, subd.

5

(b)(1)(C)) and that a principal discharged a firearm causing great bodily injury (§ 12022.53, subd. (e)(1)). Based on these findings, defendant was subject to an enhancement on each count of 25 years to life. (See *People v. Gonzales* (2001) 87 Cal.App.4th 1, 10-11, fn. 1, 18.)

The trial court sentenced consecutively on each count, thus imposing enhancements under section 12022.53, subdivision (e)(1) totaling 75 years to life.[3] Defendant contends that these consecutive enhancements violate the prohibition against double jeopardy in the state and federal constitutions. His theory is that the same conduct underlies all three enhancements. According to defendant, that conduct consists of his receipt of the gun used by a fellow gang member to commit the attempted murders, and his then giving it to another gang member who disposed of it. Thus, according to defendant, he is being punished more than once for the same criminal act.

We are not persuaded. As the California Supreme court has stated, "'[t]he Double Jeopardy Clause "protects against a *second prosecution* for the same offense after acquittal. It protects against a *second prosecution* for the same offense after conviction. And it protects against multiple punishments for the same offense." [Citation.]' [Citation.]" (*People v. Sloan* (2007) 42 Cal.4th 110, 120-121 (*Sloan*) [holding that sentencing for both murder and the firearm enhancement under section 12022.53, subd. (d) for discharge of a firearm causing death does not violate double jeopardy protections]; see *People v. Izaguirre* (2007) 42 Cal.4th 126, 134 (*Izaguirre*) [holding that the rule barring consideration of enhancements in defining necessarily included offenses does not implicate double jeopardy

---

[3] Below, we order the abstract of judgment amended to reflect the correct sentence on each count: life with the possibility of parole, plus 25 years to life under section 12022.53, subdivision (e)(1).

protections].)  Obviously, the first two categories of double jeopardy cases – protection against a second prosecution for the same offense after acquittal or conviction – do not apply because defendant's convictions of, and punishment for, the attempted murders and firearm enhancements occurred in a single unitary proceeding.  (*Sloan, supra*, 42 Cal.4th at p. 123.)  "We are not here concerned with a retrial or 'second prosecution,' but instead with a unitary trial in which section 954 expressly permits conviction of more than one crime arising out of the same act or course of conduct."  (*Izaguirre, supra,* 42 Cal.4th at p. 134.)

As for "the third category of double jeopardy protection – the prohibition of 'multiple punishments for the same offense' [citation] – the [United States] Supreme Court has made clear that '[t]he [Double Jeopardy] Clause protects only against the imposition of multiple criminal punishments for the same offense . . . [citations] . . . and then only when such occurs in successive proceedings, [citation]'.  [Citation.]" (*Sloan, supra,* 42 Cal.4th at p. 121, quoting *Hudson v. United States* (1997) 522 U.S. 93, 99.)  Federal law, like California statutory law, recognizes that cumulative punishment may be imposed under two statutes, even where they proscribe the same conduct, if the legislature has specifically authorized cumulative punishment.  (*Sloan, supra*, 42 Cal.4th at p. 121, citing *Missouri v. Hunter* (1983) 459 U.S. 359, 368-369.)  Here, the California Legislature has provided that the punishment on the section 12022.53, subdivision (e)(1) firearm enhancement shall be an additional and consecutive term of imprisonment to attempted murder.  Because it is additional punishment, it does not violate the double jeopardy provision against double punishment.  (*Izaguirre, supra*, 42 Cal.4th at pp. 128-134; *Sloan, supra,* 42 Cal.4th at p. 123; *Plascencia v. Alameida* (9th Cir. 2006) 467 F.3d 1190, 1204.)

7

Defendant fails to cite the California Supreme Court decisions in *Sloan* and *Izaguirre*, both *supra,* and fails to explain how his contention is tenable under the principles discussed in those decisions. We conclude that it is not.

*Cruel and Unusual Punishment*

As we have noted, based on the true findings under section 186.22, subdivision (b)(1)(C) and section 12022.53, subdivision (e)(1), defendant was subject to an enhancement of 25 years to life on each count of attempted murder. Defendant contends the imposition of three consecutive enhancements totaling 75 years to life is constitutionally excessive under the Eighth Amendment of the Federal Constitution (proscribing "cruel and unusual punishments") and article I, section 17 of the California Constitution (prohibiting "[c]ruel or unusual punishment"). We disagree.

Because defendant failed to object to his sentence on this ground in the trial court, the issue has been forfeited. (*People v. Kelley* (1997) 52 Cal.App.4th 568, 583.) In any event, the claim lacks merit.

Defendant was an adult – 20 years old – when the crimes were committed. While it is true that a de facto life without parole sentence for a juvenile convicted of a non-homicide offense violates the Eighth Amendment (*People v. Caballero* (2012) 55 Cal.4th 262, 265), that rule does not apply to an adult. (*People v. Argeta* (2012) 210 Cal.App.4th 1478, 1482.) Thus, to the extent defendant argues on various grounds that that his sentence is categorically impermissible as a de facto life without parole sentence given his age and personal characteristics, he is incorrect.

To the extent defendant argues that his sentence is grossly disproportionate based on his crimes under federal and state constitutional principles, he also is

8

mistaken. Under a federal constitutional analysis, "'[t]he Eighth Amendment, which forbids cruel and unusual punishments, contains a "narrow proportionality principle" that "applies to noncapital sentences."'" [Citation.] The appropriate standard for determining whether a particular sentence for a term of years violates the Eighth Amendment is gross disproportionality. That is, '[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime. [Citations.]' [Citation.] Successful grossly disproportionate challenges are "'exceedingly rare'" and appear only in an "'extreme'" case. [Citation.]" (*People v. Em* (2009) 171 Cal.App.4th 964, 977 (*Em*).)

For purposes of the California Constitution, "we use a three-pronged test to determine whether a particular sentence is disproportionate to the offense for which it is imposed. First, we examine 'the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society.' [Citation.] Second, we compare the punishment imposed with punishments prescribed by California law for more serious offenses. [Citation.] Third, we compare the punishment imposed with punishments prescribed by other jurisdictions for the same offense. [Citation.] Defendant must overcome a 'considerable burden' to show the sentence is disproportionate to his level of culpability. [Citation.] Therefore, '[f]indings of disproportionality have occurred with exquisite rarity in the case law.' [Citation.]" (*Em, supra,* 171 Cal.App.4th at p. 972.)

Whether considered under federal or state constitutional principles, defendant's sentence is not grossly disproportionate. Defendant argues, in substance, that his sentence is grossly disproportionate based on his age (20 years old) and his conduct as an aider and abettor. However, he consistently

9

mischaracterizes the nature of his conduct as the mere nonviolent, post-shooting handling of a firearm. It is true that defendant did not personally pull the trigger or commit any directly violent act. But for purposes of analyzing whether his sentence is constitutionally permissible, his conduct cannot be sanitized from the gang to which he belongs or the violence which he intentionally aided.

Viewing the evidence in the light most favorable to the judgment, the evidence established that defendant was an active member of the La Mirada Locos, a violent street gang whose primary activities include crimes such as attempted murder and robbery. The instant attempted murders were committed on February 3, 2012. Only 20 days later (February 23, 2012), another La Mirada Locos member was convicted of attempted murder in a separate case. A little less than three months later (April 27, 2012), another member was convicted of robbery, as was a third member on July 13, 2011, a little more than six months before the instant crimes. The frequent violence demonstrated by members of the La Mirada Locos illustrates the wisdom of the Legislature's judgment, expressed in section 12022.53, subdivision (e)(1), that gang members who aid and abet other members in the commission of violent felonies using firearms for the benefit of the gang should be subject to harsh punishment in order deter such crimes and protect potential victims. (See *Gonzales, supra*, 87 Cal.App.4th at p. 19 [in recognition of the serious threat posed by the use of firearms by gang members, "[t]he Legislature has chosen to severely punish aiders and abettors to crimes by a principal armed with a gun committed in furtherance of the purposes of a criminal street gang"].) The severity of defendant's sentence in the instant case cannot be divorced from the reality of this Legislative policy or the need for it.

In terms of defendant's conduct here, when the attempted murders of Riccio and his passengers were committed, defendant knew that his fellow gang member

10

(whether G.O. or Lil Kro) was going to shoot them. Defendant was told by that gang member that he was going to "blast these fools."

Furthermore, the jury was not required to accept defendant's protestations that he was merely as an unwitting participant in the aftermath of the shooting. The shooting was motivated by gang animus – Riccio belonged to a rival gang, 18th Street. The jury could reasonably infer that defendant shared that animus, and that his presence in the barbershop parking lot was intended to, and did, facilitate the attempted murders by aiding the shooter in escaping and disposing of the gun. Thus, when defendant heard the shooting occur and remained in the parking lot, the jury could infer that he did so as a co-participant in the violent event. In execution of that role, he took the gun from the shooter immediately after the shooting, began to flee with the shooter, and then handed the gun off to another gang member to dispose of it. He then changed clothes and washed his face and hands in order to conceal any evidence of his (and by extension his fellow gang members') involvement.

On this evidence – the sufficiency of which defendant does not challenge – the jury convicted defendant as an aider and abettor in three counts of attempted murder, meaning that the jury concluded that he intentionally aided the shooter in the commission of those crimes. Further, in finding the section 186.22, subdivision (b)(1)(C) and section 12022.53, subdivision (e)(1) allegations to be true, the jury also concluded that defendant acted with the intent to benefit his gang and further the commission of the attempted murders by his fellow gang member who discharged a firearm causing great bodily injury. (See *Gonzales, supra,* 87 Cal.App.4th at p. 19 [section 12022.53, subdivision (e)(1) applies in the aiding and abetting context only to an aider and abettor of an enumerated serious felony who does so for the benefit of a criminal street gang and with the specific intent to

11

further criminal conduct by gang members].)  In short, the evidence and the jury's findings belie the notion that defendant's convictions and sentence were based on conduct divorced from the intentional aiding of the attempted murders, with the additional intent of benefitting the La Mirada Locos.  In this context, it cannot be said that the imposition of consecutive enhancements of 25 years to life under section 12022.53, subdivision (e)(1) is that rare sentence which is, in federal and state constitutional analysis, grossly disproportionate to defendant's crimes and culpability.

Defendant engages in a comparative analysis, contending that his sentence is disproportionate in relation to the sentence prescribed in California for certain other violent felonies such as second degree murder, and to the sentence that could be imposed under the sentencing schemes of certain other states for gang related attempted murders with use of a firearm.  The point is not persuasive.

In *Gonzales, supra,* 87 Cal.App.4th at pages 18-19, we held that the section 12022.53, subdivision (e)(1) enhancement was not constitutionally excessive when imposed on a defendant who is convicted of first degree murder as an aider and abettor based on a natural and probable consequences theory.  What we said there is equally applicable in the instant case:  "We agree with the reasoning of the court in *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1516, a 'Three Strikes' case: 'That California's punishment scheme is among the most extreme does not compel the conclusion that it is unconstitutionally cruel or unusual.  This state constitutional consideration does not require California to march in lockstep with other states in fashioning a penal code.  It does not require "conforming our Penal Code to the 'majority rule' or the least common denominator of penalties nationwide."  [Citation.]  Otherwise, California could never take the toughest stance against repeat offenders or any other type of criminal conduct.  [¶]  "[T]he

12

needs and concerns of a particular state may induce it to treat certain crimes or particular repeat offenders more severely than any other state. . . . [¶] Whether a particular punishment is disproportionate to the offense is a question of degree. The choice of fitting and proper penalty is not an exact science but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will. In some cases, leeway for experimentation may be permissible. Thus, the judiciary should not interfere in the process unless a statute prescribes a penalty "'out of all proportion to the offense.'"'" [Citation.] [¶] The Legislature has chosen to severely punish aiders and abettors to crimes by a principal armed with a gun committed in furtherance of the purposes of a criminal street gang. It has done so in recognition of the serious threats posed to the citizens of California by gang members using firearms. The penalty imposed on [the defendant aider and abettor] was not out of proportion to this offense and does not constitute cruel or unusual punishment."[4]

*Pitchess Review*

Defendant asks that we examine the transcript of the in camera hearing on his *Pitchess* motion. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1229-1232.) We have done so, and find no abuse of discretion in the trial court's ruling that no discoverable material existed.

---

[4] Because we reject the contention on the merits, we do not discuss defendant's argument that his trial counsel was ineffective for failing to mount a constitutional challenge to the sentence in the trial court.

*Credit*

Defendant contends, respondent concedes, and we agree that defendant is entitled to one more day of presentence credit for time actually served. We order the abstract of judgment be corrected to reflect 462 (as opposed to 461) days of actual credit, and 69 days good time/work time.

*Sentence Correction*

The trial court purported to sentence defendant to three consecutive terms of 25 years to life on the attempted murder convictions, for a total term of 75 years to life. This sentence reflects the 25 year to life enhancements under section 12022.53, subdivision (e)(1), but fails to reflect the separate life sentence that must be imposed for each attempted murder conviction. Respondent contends that this constitutes an illegal sentence. Defendant offers no response in his reply brief.

An illegal sentence can be corrected at any time. (*People v. Serrato* (1973) 9 Cal.3d 753, 763, disapproved on different grounds in *People v. Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1.) We agree with respondent that the sentence is illegal. The correct sentence on each count is life with the possibility of parole (§ 664, subd. (a)) for attempted murder (for which defendant must serve at least 7 calendar years (*People v. Jefferson* (1999) 21 Cal.4th 86, 96)), plus a consecutive term of 25 years to life for the section 12022.53, subdivision (e)(1) enhancement (because a term under section 12022.53 is an additional sentence to that of the underlying crime (*People v. Jones* (2009) 47 Cal.4th 566, 572)). The abstract of judgment must be amended to so reflect.

14

## DISPOSITION

We order the abstract of judgment to be corrected as follows: (1) on each conviction of attempted murder, the sentence shall be life with the possibility of parole, plus a consecutive term of 25 years to life under section 12022.53, subdivision (e)(1), the sentence on each count to run consecutively to the others; and (2) to reflect 462 (as opposed to 461) days of actual credit, and 69 days good time/work time. The trial court shall forward the amended abstract to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

EPSTEIN, P. J.

MANELLA, J.

15