Filed 5/22/25  P. v. Camacho CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE CAMACHO,<br><br>    Defendant and Appellant. | D084023<br><br><br><br>(Super. Ct. No. SWF2201671) |

APPEAL from a judgment of the Superior Court of Riverside County, Randolph Rogers, Judge.  Affirmed as modified.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

During a vehicle check, defendant Jose Camacho misidentified himself to a sheriff's deputy and dropped a loaded handgun magazine before running

from the deputy. Defendant was apprehended and a search of the vehicle yielded an unloaded handgun tucked in defendant's belongings. A jury convicted defendant of possession of a firearm by a felon (Pen. Code,[1] § 29800, subd. (a)(1)), unlawful possession of ammunition (§ 30305, subd. (a)(1)), presenting false identification to a peace officer (§ 148.9, subd. (a)), and resisting arrest (§ 148, subd. (a)(1)). The trial court found defendant had suffered a prior strike conviction.[2] The court sentenced defendant to 2 years 8 months on the firearm conviction (the low term of 16 months, doubled for the strike prior) and concurrent sentences on the remaining convictions.

On appeal, defendant contends the trial court erred by denying his motion to dismiss his strike prior in the interests of justice under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*) and section 1385.[3] For reasons we will explain, we conclude the trial court acted within its discretion in denying defendant's *Romero* motion.

Defendant also contends the trial court erred by imposing a concurrent sentence on the ammunition conviction instead of staying it under section 654 as duplicative of the sentence on the firearm conviction. The

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    "We use the term 'strike' to describe a prior felony conviction that qualifies a defendant for the increased punishment specified in the Three Strikes law." (*People v. Fuhrman* (1997) 16 Cal.4th 930, 932, fn. 2; see §§ 667, 1170.12.)

[3]    Section 1385, subdivision (a) provides in part that a "judge or magistrate may, either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." "A *Romero* 'motion' is in fact a request that the court exercise its authority under section 1385 to strike a prior felony conviction." (*People v. Lee* (2008) 161 Cal.App.4th 124, 126, fn. 2, italics omitted.)

People concede the error. We agree that the sentence on defendant's ammunition conviction should be stayed under section 654, and modify the judgment accordingly.

As so modified, the judgment is affirmed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

On the morning of September 27, 2022, Riverside County Sheriff's Deputy Michael Pohlman observed two occupants in an SUV parked on a dead-end street near a school. The deputy approached and requested the occupants' identification. The driver, Holly W., presented her driver's license. The passenger — defendant — told the deputy he had no identification but that his name was "Javier Camacho" and his date of birth was June 7, 1970. The deputy ran Holly's and defendant's information through the computer in his patrol vehicle. The car in which the deputy saw Holly and defendant belonged to Holly, its registration was expired, her driver's license was suspended, and she had an outstanding misdemeanor warrant. The name and birthdate that defendant provided did not yield any exact matches, but the name came back as an alias for Jose Camacho, whose actual birthdate is June 27, 1972 (instead of June 7, 1970). Deputy Pohlman retrieved additional records and saw a booking photograph that matched defendant. The records revealed that defendant was on an active parole grant. Based on defendant's misidentification of himself and his parole status, Deputy Pohlman radioed for backup.

Deputy Pohlman reapproached the SUV and asked defendant for his name and birthdate again. Defendant provided the same false information as before. Holly appeared calm but defendant appeared nervous. The deputy

3

asked defendant if he had ever been arrested and defendant responded, "not that [I] kn[o]w of." Deputy Pohlman asked defendant to exit the SUV and defendant complied.

Outside the SUV, Deputy Pohlman instructed defendant to hold his hands behind his back for a pat search for weapons. As defendant did so, the deputy saw a loaded firearm magazine in defendant's right hand. Defendant dropped the magazine and Deputy Pohlman began to handcuff him. As the deputy did so, defendant ran. The deputy gave chase and ultimately took defendant to the ground near a childcare center. Defendant initially refused to take his right arm out from under his body, which caused the deputy to be concerned that defendant was armed. The deputy eventually handcuffed defendant and placed him in a patrol vehicle.

Deputy Pohlman and another responding deputy searched the SUV. After searching for a few minutes, the other deputy found a backpack in the SUV's cargo area that contained an unloaded Ruger semiautomatic handgun and male clothing. The handgun's magazine well was empty. Deputy Pohlman confirmed that the magazine defendant dropped fit into the handgun's magazine well. The magazine contained six rounds.

The parties stipulated that defendant was previously convicted of a felony.

## B. Procedural Background

Defendant was charged with one count each of possession of a firearm by a felon (§ 29800, subd. (a)(1); count 1), unlawful possession of ammunition (§ 30305, subd. (a)(1); count 2), presenting false identification to a peace officer (§ 148.9, subd. (a); count 3), and resisting arrest (§ 148, subd. (a)(1); count 4). The charging document alleged defendant had suffered a prior strike conviction in March 2021 for making a criminal threat (§ 422).

4

A jury found defendant guilty on all counts and the trial court found that defendant had suffered a prior strike conviction. The court denied defendant's *Romero* motion to dismiss the prior strike conviction.

The trial court sentenced defendant on the firearm charge to 2 years 8 months in prison, consisting of the low term of 16 months, doubled for the prior strike conviction. The court imposed the same sentence, to be served concurrently, on the ammunition conviction. The court imposed concurrent sentences of 180 days on the false identification conviction and 360 days on the resisting arrest conviction.

## III. DISCUSSION

### A. *Romero* Motion

Defendant contends the trial court erred by denying his *Romero* motion. We disagree.

#### 1. Background

##### a. Defendant's Motion

Defendant filed a *Romero* motion seeking to strike his prior strike conviction in the interests of justice under section 1385. He argued this relief was appropriate for three reasons. First, defendant asserted "[t]he current offense is related to childhood trauma leading to mental health and addiction issues." Specifically, defendant asserted he grew up in a "gang-controlled neighborhood" where "[d]rugs and violence surrounded him daily," which ultimately resulted in his becoming addicted to methamphetamine and being "routinely in trouble with the law." He acknowledged, however, "that he was blessed with a loving home environment."

Second, defendant argued "[t]he punishment is disproportionate to the severity of the current offense." He reasoned the punishment was excessive

5

because the prior strike conviction would result in him serving 80 percent of his sentence, and the offense was not very serious because his "actual conduct . . . was passive" and the handgun was "secreted so deeply within the numerous personal items in the rear of the vehicle that it took a protracted methodical search to find it."

Finally, defendant asserted he "has struggled with methamphetamine addiction throughout his entire adult life and has tried repeatedly to clean up" and was "willing[] to rehabilitate himself."

### b. The People's Opposition

The People opposed the motion, arguing defendant falls within the spirit of the "Three Strikes" law. The opposition noted that defendant's probation had been revoked in his prior strike conviction case, he had reoffended six times between the strike conviction and the current case, and he had an extensive criminal history. An exhibit attached to the People's opposition showed this criminal history:

- In 1989, when defendant was 17, he was adjudicated a ward of the juvenile court for committing robbery (§ 211) and vehicle-taking (Veh. Code, § 10851). He was committed to the California Youth Authority for seven years.

- In 1994, defendant was convicted of felony cargo theft (§ 487h, subd. (a)).

- In 1998, defendant was convicted of felony possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)).[4]

- In 1999, defendant was convicted of a felony weapons offense (former § 12020, subd. (a)) and sentenced to 18 months in prison. He violated parole 11 times.

---

4    Here and elsewhere, the criminal history cites Penal Code section 11377, but it likely intended to cite Health and Safety Code section 11377.

- In 2000, defendant was again convicted of a felony weapons offense (former § 12020, subd. (a)) and sentenced to 32 months in prison. He violated parole 11 times.

- In 2002, defendant was convicted of felony possession of a controlled substance in prison (§ 4573.6, subd. (a)) and sentenced to 36 months in prison. He violated parole seven times.

- In 2004, defendant was convicted of felony domestic violence (§ 273.5, subd. (a)) and placed on three years' formal probation. He violated probation numerous times and was sentenced to prison. He then violated parole five times.

- In 2005, defendant was convicted of misdemeanor battery (§ 242).

- In 2008, defendant was convicted in separate misdemeanor cases of violating a restraining order (§ 273.6, subd. (a)) and resisting arrest (§ 148, subd. (a)(1)).

- In 2010, defendant was convicted of felony possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) and placed on three years' formal probation. His probation was revoked and later terminated. He was then sentenced to prison for 24 months and thereafter violated parole.

- In 2011, defendant was convicted of a felony weapons offense (former § 12020, subd. (a)) and misdemeanor offenses for presenting false identification to a peace officer (§ 148.9, subd. (a)) and possession of drug paraphernalia (Health & Saf. Code, § 11364, subd. (a)). He was sentenced to eight years in prison, violated parole once, and was discharged to postrelease community supervision, which was revoked twice.

- In 2017, defendant was convicted of misdemeanor possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) and placed on three years' summary probation.

- In 2018, defendant was convicted of felony domestic violence (§ 273.5, subd. (a)) and placed on five years' formal probation. He was eventually released on postrelease community supervision, which was revoked six times.

7

- In 2020, defendant was convicted of a misdemeanor for violating a restraining order (§ 273.6, subd. (a)).

- In March 2021, defendant was convicted of the strike offense at issue here — making a criminal threat (§ 422). Defendant was placed on two years' formal probation, which was revoked and terminated. He was then sentenced to prison for 16 months and was on parole for this conviction at the time he committed the current offenses.

- In June 2021, defendant was convicted of a misdemeanor restraining order violation (§ 273.6, subd. (a)).

- In July 2021, defendant was convicted of misdemeanor offenses of domestic battery (§ 243, subd. (e)(1)) and violation of a protective order (§ 166, subd. (c)(1)).

- In 2022, defendant was convicted in one misdemeanor case of driving with a blood-alcohol level of 0.08 percent or above (Veh. Code, § 23152, subd. (b)) and driving without a valid driver's license (*id*., § 12500, subd. (a)), and in another misdemeanor case of willfully disobeying a court order (§ 166, subd. (a)(4)).

### c. The Probation Officer's Presentence Report

The probation officer's presentence report (probation report) in the current matter described defendant's family relationships and childhood dynamics. According to the report, "defendant described his childhood as good," he "said his parents were always there for him," and "he denied experiencing any form of abuse." Defendant claimed he was drunk at the time of the charged offense. However, he completed substance abuse treatment in 2009, denied currently being addicted to any substances, and "[w]hen asked if he felt that his problems stemmed from alcohol use, he said his problems stemmed from 'trusting people I shouldn't have.'" The probation report indicated defendant was currently subject to two criminal protective orders identifying Holly as a protected person.

8

The probation report stated there were no mitigating circumstances, and the following aggravating circumstances: (1) the manner in which the crime was carried out indicated planning, sophistication, or professionalism (Cal. Rules of Court,[5] rule 4.421(a)(8)) because defendant "provided false identification and information to law enforcement to avoid apprehension" and defendant's criminal history and current probationary status suggested he "had full knowledge of the consequences of . . . possessing a firearm and ammunition"; (2) "defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness" (rule 4.421(b)(2)); (3) "defendant has served a prior term in prison or county jail under section 1170(h)" (rule 4.421(b)(3)); (4) "defendant was on probation, mandatory supervision, postrelease community supervision, or parole when the crime was committed" (rule 4.421(b)(4)); and (5) "defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory" (rule 4.421(b)(5)).

The probation officer recommended that the court sentence defendant to a total term of four years in state prison, consisting of a four-year term on the principal firearm conviction (the two-year middle term, doubled to four years for the prior strike conviction); a concurrent four-year term (i.e., a doubled middle term) on the ammunition conviction; a concurrent 180-day sentence on the false identification conviction; and a concurrent one-year term on the resisting arrest conviction.

---

[5] Undesignated rule references are to the California Rules of Court.

### d. The Sentencing Hearing

At the outset of the sentencing hearing, the trial court stated it had reviewed the probation report but not the prosecutor's opposition to defendant's *Romero* motion. The court announced its "inclination would be to strike the strike and impose the midterm, which would be two years." The court acknowledged "[t]here were a fair number of aggravating circumstances": (1) defendant has "a very long rap sheet," though "all things are relative, and it's not as bad as you see"; (2) defendant "doesn't seem to be able to keep himself free of the system"; (3) "he's already gone to state prison, and then he was out on parole"; and (4) "he seems to violate every time he's either on probation or parole."

The prosecutor argued defendant did "not fall within the spirit of *Romero* because his recent strike was for a [section] 422 that happened in 2021," he was still on parole[6] for that strike conviction when he committed the current offenses, and he had reoffended six times since the strike conviction.[7]

The court responded "frankly" that it had proposed granting defendant's motion because the court had overheard the parties' preliminary negotiations and understood that the prosecutor would be satisfied with *any* state prison sentence. Recognizing that was not the case, the court weighed the competing merits. On the one hand, the current principal conviction was

---

6    The prosecutor stated defendant was still on probation when he committed the current offense. However, as stated *ante*, the court previously revoked defendant's probation status, sentenced him to prison, and at the time of the instant offense, defendant was on parole.

7    The prosecutor misstated that six months elapsed between defendant's March 2021 prior strike conviction and the September 2022 charged offense. In fact, about 18 months had elapsed.

for a felony; the court "[ha]dn't realize[d] that" defendant was "actually on parole" for the subject strike conviction "at the time of the [current] offense"; and defendant "put peace officers at risk" by fleeing and resisting them. "On the other hand," the court acknowledged "this is . . . not the crime of the century" and that defendant had kept the handgun and magazine "entirely separate" such that the handgun was not immediately usable.

The prosecutor reiterated her view that the court should deny defendant's motion. Defense counsel submitted.

The trial court denied defendant's *Romero* motion and imposed the low term of 16 months, doubled to 2 years 8 months.

### 2. Relevant Legal Principles

A trial court has the discretion under section 1385, subdivision (a) to dismiss or "strike" a prior strike conviction under the Three Strikes law "in furtherance of justice." (§ 1385, subd. (a); see *Romero*, *supra*, 13 Cal.4th at p. 504.) In deciding whether to do so, "the court . . . must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes law]'s spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)

The Three Strikes law "not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm . . . . [T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*).) "The court is presumed to have

11

considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

We review the trial court's ruling for an abuse of discretion. (*Carmony*, *supra*, 33 Cal.4th at p. 378.) " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*Id.* at pp. 376–377.)

### 3. Analysis

Defendant has not met his "burden . . . to clearly show that the sentencing decision was irrational or arbitrary." (*Carmony*, *supra*, 33 Cal.4th at p. 376.) The record shows he has an extensive history of significant criminal activity that has gone largely uninterrupted since he committed his first felony at age 17. His criminal history includes convictions for numerous weapons, domestic violence, and restraining/protective order offenses. When previously shown leniency through probation, parole, or postrelease community supervision, defendant performed poorly. Indeed, at the time he committed the current offenses, defendant was still on parole for the prior strike conviction he now seeks to strike. On this record, the trial court did not abuse its discretion in concluding defendant falls within the spirit of the Three Strikes law.

Defendant argues the trial court acted unreasonably because he "suffers from childhood trauma and substance abuse problems that may account at least in part for his criminal history." We are not persuaded. First, the record contradicts defendant's claim of childhood trauma. According to the probation report, defendant had a "good" childhood, "his

12

parents were always there for him," and he "denied experiencing any form of abuse."

Second, the record undermines defendant's claim that substance abuse may have contributed to his criminal history. When asked by the probation officer about the potential sources of his "problems," defendant "said his problems stemmed from 'trusting people I shouldn't have.' " Defendant denied any current addictions or that alcohol contributed to his problems. In addition, even assuming substance abuse was a contributing factor to defendant's criminal history, his apparent failure to address the issue since his successful treatment in 2009 supports the trial court's denial of his *Romero* motion. (See, e.g., *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511 ["drug addiction is not necessarily regarded as a mitigating factor when a criminal defendant has a long-term problem and seems unwilling to pursue treatment"]; *People v. Gaston* (1999) 74 Cal.App.4th 310, 322 ["Although 'drug use appears to be an underlying factor in [appellant's] criminal behavior, and in fact may be the root cause thereof,' the record is barren of any attempts by [defendant] to 'root out' such destructive drug dependency. Accordingly, his drug dependency does not fall into the category of mitigating circumstances."]; *Williams*, *supra*, 17 Cal.4th at p. 163 ["But neither can we ignore the fact that [defendant] . . . did not follow through in efforts to bring his substance abuse problem under control."].)

Defendant also cites the trial court's favorable comments during the sentencing hearing after the court announced its initial inclination to grant defendant's motion. However, the court explained the limited information upon which it had based its initial assessment, and the court's favorable comments were far outweighed by the court's unfavorable comments about

13

defendant's criminal history, aggravating circumstances, and the dangerous circumstances of the current offenses.

In sum, the trial court acted within its discretion in denying defendant's *Romero* motion.

## B. Section 654 Stay

Defendant contends the trial court's imposition of a concurrent sentence on the unlawful possession of ammunition conviction violates section 654's prohibition on double punishment. The People concede this was error. We agree the sentence on the ammunition conviction should have been stayed under section 654.

### 1. Background

At the sentencing hearing, the trial court and counsel debated whether the firearm and ammunition counts should have been charged separately.[8] The court viewed this as "a close question" because the court understood that the charges could not have been brought separately had the magazine been loaded in the handgun. The prosecutor acknowledged she could not have separately charged both offenses if the gun had been loaded, but maintained that "because it was unloaded, those are two separate offenses." The trial court explained why it considered the prosecutor's view "hypertechnical":

> [T]here was only a single clip that belonged to th[e] Ruger that was not in the gun[,] . . . the Ruger wasn't, in [the court's] view, a complete firearm, absent the clip. [¶] . . . [¶] It's not like you've got multiple clips out there. · It's not like this Ruger had a clip in it without bullets in it and there was a separate clip with bullets in

---

8    This debate arose in the context of concurrent versus consecutive sentencing, but the colloquy nevertheless is informative with respect to defendant's section 654 challenge.

14

> it so that you had . . . a distinct firearm and a distinct clip with bullets in it. [¶] In fact, what you had was the Ruger without the clip, and the clip was separate . . . . [¶] . . . [¶] One firearm. The clip happened to be out of it.

The trial court then sentenced defendant on the principal firearm conviction and imposed a concurrent sentence on the ammunition conviction.

### 2. Relevant Legal Principles

"Section 654 prohibits punishment for two offenses arising from the same act or from a series of acts constituting an indivisible course of conduct." (*People v. Sok* (2010) 181 Cal.App.4th 88, 99 (*Sok*), fn. omitted; see § 654, subd. (a) ["An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."]; *People v. Corpening* (2016) 2 Cal.5th 307, 311 (*Corpening*).) " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*People v. Britt* (2004) 32 Cal.4th 944, 951–952 (*Britt*), quoting *Neal v. State of California* (1960) 55 Cal.2d 11, 19.) If, on the other hand, a defendant harbored " 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

Several Courts of Appeal have held that section 654 precludes multiple punishments for the offenses of felon in possession of a firearm and unlawful

15

possession of ammunition where all the ammunition is loaded in the firearm. (See *People v. Lopez* (2004) 119 Cal.App.4th 132, 138 ["Where, as here, all of the ammunition is loaded into the firearm, an 'indivisible course of conduct' is present and section 654 precludes multiple punishment."]; *Sok, supra,* 181 Cal.App.4th at p. 100 [where "the ammunition at issue in [the firearm and ammunition counts] was either loaded into [the defendant]'s handgun or had been fired from that gun," § 654 precluded separate punishments because there was "no evidence in the record . . . that . . . [the defendant] had different or multiple objectives in possessing the loaded firearm and possessing the ammunition in the gun itself"].) The *Lopez* court reasoned that to conclude otherwise would contravene our Supreme Court's guidance "that the appellate courts should not 'parse[] the objectives too finely.' " (*Lopez*, at p. 138, quoting *Britt, supra,* 32 Cal.4th at p. 953].)

### 3. Analysis

Although this case presents a slightly different scenario than the loaded-firearm precedents, the People concede "[t]here was no evidence [defendant] had multiple intents or objectives in possessing the unloaded firearm separately from its loaded magazine." We agree. Indeed, the court's statements that it viewed the handgun and magazine collectively as "[o]ne firearm" that was not "a complete firearm, absent the clip," suggest the court implicitly found that defendant's possession of the handgun and the magazine "reflects a single 'intent and objective' " (*Corpening, supra,* 2 Cal.5th at p. 311) to possess a loaded firearm.

Accordingly, the sentence on defendant's unlawful possession of ammunition conviction shall be stayed. (See *People v. Duff* (2010) 50 Cal.4th 787, 796 [" '[I]mposition of concurrent sentences is precluded by section 654 [citations] because [under such a sentence] the defendant is deemed to be

16

*subjected* to the term of *both* sentences although they are served simultaneously.' [¶] . . . [¶] Accordingly, . . . when a court determines that a conviction falls within the meaning of section 654, it is necessary to *impose* sentence but to stay the *execution* of the duplicative sentence." (Citations omitted.)]; *People v. Mesa* (2012) 54 Cal.4th 191, 195 [to avoid double punishment, " '[e]xecution of the sentence for one of the offenses must be stayed' "].)

## IV.  DISPOSITION

The judgment is modified to stay the 2-year 8-month concurrent sentence on the unlawful possession of ammunition conviction (count 2) pursuant to section 654.  The trial court shall amend the abstract of judgment accordingly and forward copies of the amended abstract to the Department of Corrections and Rehabilitation.  As so modified, the judgment is affirmed.


RUBIN, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.

17