Filed 4/22/26  P. v. Williams CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H052860 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1239917) |
| v. | |
| MARTEL CHARROD WILLIAMS, | |
| Defendant and Appellant. | |

This is Martel Charrod Williams's second appeal to this court in connection with his 2013 convictions for robbery and false imprisonment.

Williams pleaded no contest to seven counts of robbery (Pen. Code,[1] § 211) and two counts of false imprisonment (§§ 236, 237) and admitted the firearm enhancement (§ 12022.53) and gang enhancement (§ 186.22) allegations attached to the robbery counts, and the gang enhancement allegations attached to the false imprisonment counts. The trial court imposed on Williams an aggregate sentence of 17 years and four months in prison.

---

[1] All further unspecified statutory references are to the Penal Code.

In 2021, the Secretary of the California Department of Corrections and Rehabilitation (CDCR) recommended recall of Williams's sentence. The trial court declined to recall his sentence. Williams appealed, and the Attorney General conceded that the court's order must be reversed and the matter remanded for a rehearing. A different panel of this court agreed and remanded to the trial court to determine whether to recall Williams's sentence and resentence him under section 1172.1.

On remand, the trial court recalled Williams's sentence and resentenced him. At resentencing, the court imposed on Williams the same sentence, 17 years and four months in prison.

On appeal, Williams argues that the trial court abused its discretion by applying the incorrect legal standard under section 1385 and, as a result, failed to consider certain mitigating factors in favor of striking one of the firearm enhancements. For the reasons stated below, we affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

In 2013, Williams pleaded no contest to seven counts of robbery (§ 211) and two counts of false imprisonment (§§ 236, 237). Williams admitted the firearm enhancement (§ 12022.53) and gang enhancement (§ 186.22) allegations attached to the robbery counts, and the gang enhancement allegations attached to the false imprisonment counts. The trial court sentenced Williams to 17 years and four months in prison. Of those 17 years and four months, the majority (13 years and four months) was imposed on the firearm enhancements attendant to the robbery counts.

In 2021, in response to a letter from the Secretary of the CDCR (Secretary) recommending recall of Williams's sentence, the trial court, without holding a hearing on the matter or appointing counsel for Williams,

2

issued an order in which it declined to recall Williams's sentence. Williams appealed the order. The Attorney General conceded in this court that, under section 1172.1, subdivision (b)(2) (as amended by the Legislature in 2022), the order must be reversed and the matter remanded. A different panel of this court agreed, reversed the trial court's order denying recall, and remanded the matter to the trial court with directions to conduct further proceedings in accordance with section 1172.1 to determine whether to recall Williams's sentence and resentence him. (*People v. Williams* (Oct. 6, 2023, H050287) [nonpub. opn.].)

On July 25, 2024, Williams filed a motion for recall and resentencing. Williams asserted that the trial court should recall his sentence because the Secretary had recommended resentencing and nothing in the record suggested that there was an unreasonable risk that Williams would commit a violent felony (or " 'super strike' offense[]") under section 667, subdivision (e)(2)(C)(iv).

Williams argued that, in resentencing, the trial court should apply any changes in the law that would reduce his sentence and consider postconviction factors, his age at the time of the underlying offense, and any psychological, physical, or childhood trauma he experienced. (Quoting § 1172.1, subds. (a)(2), (a)(4).[2]) In addition, Williams asserted that, under section 1385, subdivision (c), the court should strike one of the firearm enhancements, thereby reducing his sentence by three years and four months, because his rules violations in custody were nonviolent and the court

---

[2] Williams's citation to section 1172.1, subdivision "(a)(4)" appears to be a typographical error. At the time Williams filed his motion, the quoted language in Williams's motion appeared in section 1172.1, subdivision (a)(5). (Compare Stats. 2023, ch. 446, § 2 [eff. Jan. 1, 2024] with Stats. 2022, ch. 58, § 9 [eff. June 30, 2022].)

must assign " 'great weight' " to mitigating factors, namely, the existence of multiple enhancements and Williams's mental illness.  In his interview with the probation department, Williams maintained that he began using drugs and alcohol at an early age, including marijuana at 10 years old, alcohol at 13 years old, cocaine at 15 years old, and methamphetamine at 17 years old.  He asserted that, at the time of the underlying offense, he "was under the influence of methamphetamine, cocaine, MDMA, and marijuana."

Williams contended that the evidence in the record did not support a finding that dismissal of the enhancement would endanger public safety because all but one of the rules violations he incurred while incarcerated were nonviolent.  His rules violations included possession of a cellular telephone and distribution of marijuana in 2017, participating in a riot (during which he punched a fellow inmate) in 2018, being out of bounds in 2019, delaying a peace officer in the performance of duties in 2020, a failure to participate in a program in 2021, and four positive drug tests over seven months (between May and November) in 2023.  Williams completed an outpatient drug program in March 2024, after his most recent drug violation.  In addition, the Secretary's recommendation identified as mitigating factors Williams's completion of an anger management program, "a course to develop cognitive insight," and educational courses, as well as his characterization as having been " 'respectful,' 'diligent,' and 'a pleasure to have in class.' " Williams requested that the trial court resentence him to 12 years in prison.[3]

The district attorney agreed that the trial court should recall the sentence and resentence Williams but argued that the court should sentence

---

[3] Williams also requested that the trial court resentence him to the low term of two years on the robbery counts.  The court did not do so.  Williams does not challenge the court's imposition of the middle term on these counts.

Williams to the same term, 17 years and four months. The district attorney asserted that the likelihood that Williams would "reoffend is high" because Williams had not obtained his GED, participated in substance abuse treatment, or engaged in sustained employment, but, rather, had "distributed and used controlled substances multiple times while in custody, including when he was in a less restrictive custodial setting . . . in 2023." In addition, the district attorney stated that the CDCR assessment indicated Williams's "criminogenic needs factors in the areas of substance abuse, criminal personality, anger, educational problems, and employment problems . . . remain[ed] high." The district attorney challenged Williams's asserted mitigating factor of mental health issues on the basis that Williams " 'seem[ed] unwilling to pursue treatment' " for his substance abuse. (Quoting *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511.)

In reply, Williams asserted that he had experienced childhood trauma. He argued that the trial court should also consider this factor when resentencing him. He submitted in support of his argument a declaration from his paternal grandmother attesting to the fact that Williams's father had been incarcerated since 2005 (when Williams was around 12 years old), and Williams's mother had also served time in jail.

On November 22, 2024, the trial court conducted a hearing on Williams's motion for recall and resentencing. The court stated that it was required to resentence Williams. The court considered the parties' respective proposals for resentencing and took Williams's motion under submission.

On December 13, 2024, the trial court issued a written order resentencing Williams to 17 years and four months. The court stated the prosecution bore the burden of overcoming the "presumption favoring recall" by demonstrating by a preponderance of the evidence that Williams posed an

5

unreasonable risk to public safety under sections 667 and 1170.18. (See also § 667.5.)

The trial court stated that it had the discretion to strike the firearm enhancement " 'in the interest of justice,' " provided striking the enhancement would not "endanger public safety." The court referenced section 1385, subdivision (c)(2)'s definition of "endangering public safety" as " 'there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' " The court stated that, under the statute, if striking the enhancement would not endanger public safety, "proof of presence of multiple enhancements in a single case and connection to mental illness [would] weigh 'greatly in favor of dismissing the enhancement.' "

While summarizing the parties' contentions regarding the mitigating and aggravating factors related to Williams's request to strike a firearm enhancement, the trial court stated, "Only if this court finds that there is no threat of physical injury or serious danger to others, then this court must look at the proof of presence of multiple enhancements in a single case and connection to mental illness."

In its ruling, the trial court reiterated the standard and burden under section 1172.1 for determining whether to recall and resentence Williams. The court considered the mitigating circumstances Williams presented, including his age, his role in and the circumstances of the underlying offense, and his experience of childhood trauma. The court also considered Williams's conduct in prison. It set forth in a chart mitigating factors (completion of an outpatient program and satisfactory education progress) and aggravating factors (rules violations) from Williams's prison record and considered

6

Williams's continued rules violations after being placed in less restrictive custody.

The trial court made the following findings about Williams:  his "personal growth, commitment to rehabilitation, and self-improvement are spotty.  He is now thirty years old and presumably has had time for self-reflection.  The record is void of compelling evidence that the circumstances surrounding [] Williams has changed since his original sentencing so that he is no longer considered to endanger public safety.  [His] rehabilitative record is very poor.  He is unable to follow the rules while in prison."  The court further found that Williams "continues to pose an unreasonable risk to public safety as defined in [section] 1170.18."  The court resentenced Williams to 17 years and four months.

## II.  DISCUSSION

On appeal, Williams contends the trial court abused its discretion (1) by applying the incorrect legal standard under section 1385 and (2)  by refusing under section 1385 to consider the existence of multiple enhancements and Williams's mental illness (in the form of substance addiction) and childhood trauma.  In addition, Williams asserts that the court impermissibly "conflated" the standards under sections 1172.1 and 1385 for assessing risk to public safety.  He maintains that the record lacks evidence that he has engaged in violent conduct that would endanger public safety, other than the "single punch thrown in a yard fight" in 2018.

The Attorney General disputes Williams's contentions of error.

*A. Applicable Law*

1. <u>Section 1172.1</u>

Section 1172.1, subdivision (a)(1) authorizes the trial court "at any time upon the recommendation of the secretary" to "recall the sentence and

commitment previously ordered and resentence" a defendant "in the same manner as if they had not previously been sentenced." When the Secretary requests resentencing, there is "a presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant currently poses an unreasonable risk of danger to public safety." (*Id.*, subd. (b)(2).) An " 'unreasonable risk of danger to public safety' means an unreasonable risk that the [defendant] will commit a new violent felony." (§ 1170.18, subd. (c).) A " 'violent felony' " is defined as, inter alia, murder or voluntary manslaughter, mayhem, sexual offenses, felonies punishable by death or life imprisonment, felonies where "the defendant inflicts great bodily injury on a person" or "uses a firearm which use has been charged and proved," robbery, arson, attempted murder, and kidnapping. (§ 667.5, subd. (c).)

When resentencing, "[c]ourts should consider [s]ection 1385 of the Penal Code" (Stats. 2023, ch. 446, § 1, subd. (b); see also § 1385, subd. (c)) as well as postconviction factors or any other evidence that continued incarceration is no longer in the interests of justice. (§ 1172.1, subd. (a)(5).) Section 1172.1 enumerates the following nonexhaustive list of postconviction factors courts must consider: "the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (*Id.*, subd. (a)(5).) In addition, the court "shall consider if the defendant has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence, . . . or if the defendant is a

youth or was a youth as defined under subdivision (b) of [s]ection 1016.7 at the time of the commission of the offense, and whether those circumstances were a contributing factor in the commission of the offense." (*Ibid*.)

> 2. <u>Section 1385</u>

Section 1385, subdivision (c)(1) provides, "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." "In exercising its discretion under [subdivision (c)], the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in [the subparagraphs to subdivision (c)(2)] are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Id*., subd. (c)(2).)

As applicable here, the mitigating circumstances set forth in the provision include: "Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed." (§ 1385, subd. (c)(2)(B).) "The current offense is connected to mental illness." (*Id*., subd. (c)(2)(D).) "The current offense is connected to prior victimization or childhood trauma." (*Id*., subd. (c)(2)(E).)

Despite the use of the term "shall" in section 1385, subdivision (c)(2)(B), resentencing courts retain their discretion to grant or deny a request to strike one or more enhancements. In *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*), the California Supreme Court agreed with the decision in *People v. Ortiz* (2023) 87 Cal.App.5th 1087 that "the specification of mandatory factors

9

did not displace the trial court's obligation to exercise discretion in assessing whether dismissal is 'in furtherance of justice.' " (*Ortiz*, at p. 1093; *Walker*, at p. 1029 ["We conclude that the plain language of section 1385, subdivision (c)(2) contemplates that a trial court will exercise its sentencing discretion in a manner consistent with the *Ortiz* court's understanding."]; *id.* at p. 1035; see also *People v. Anderson* (2023) 88 Cal.App.5th 233, 239–240 (*Anderson*).)

The Supreme Court concluded in *Walker* that, "[s]pecifically, absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present. [Citation.] In other words, if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Walker*, *supra*, 16 Cal.5th at p. 1029; see also *id.* at p. 1036; *Anderson*, *supra*, 88 Cal.App.5th at p. 239 [noting that the plain language of section 1385(c) "establishes[ that] the trial court has discretion to dismiss sentencing enhancements; certain circumstances weigh greatly in favor of dismissal; and a finding of danger to public safety can overcome the circumstances in favor of dismissal"].)

3. Standard of Review

We review for abuse of discretion the trial court's decision declining to strike a sentence enhancement under section 1385. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*); *People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225 (*Gonzalez*).)

"The abuse of discretion standard is highly deferential.  When, ' "as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*Mendoza*, *supra*, 88 Cal.App.5th at p. 298.)  "It is not enough to show that reasonable people might disagree about whether to strike one or more of [the defendant's] prior convictions." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310 (*Myers*).)

However, while deferential, the abuse of discretion standard " ' "is not empty." [Citation.]  "[I]t asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts." ' " (*People v. Uribe* (2011) 199 Cal.App.4th 836, 858.)  "Thus, the trial court abuses its discretion when it bases its decision 'on impermissible factors [citation] or on an incorrect legal standard.' " (*Ibid.*; *Gonzalez*, *supra*, 103 Cal.App.5th at p. 225.)  "Absent evidence to the contrary, we presume that the trial court knew the law and followed it." (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042 (*Ramirez*).)

*B. Analysis*

Williams contends that the trial court applied an incorrect legal standard in determining whether to strike his firearm enhancement under section 1385 by stating that it was required to consider proof of the presence of multiple enhancements and a connection between the underlying offense and mental illness "[o]nly if th[e] court f[ound] that there is no threat of physical injury or serious danger to others."  Williams maintains that, by requiring him to demonstrate that there is " 'no risk' " or " 'no threat' " of physical injury or danger to others—rather than that there is no " 'likelihood

11

that the dismissal of the enhancement would result in physical injury or other serious danger to others' "—before the court would consider mitigating factors, the court impermissibly lowered the prosecution's burden. Williams asserts that, because the court applied the incorrect standard, it failed to consider "evidence of [Williams's] mental health or multiple enhancements in its analysis."

We are not persuaded. Section 1385, subdivision (c)(1) provides that "the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances [set forth herein] are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, *unless* the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Id.*, subd. (c)(2), italics added.) In other words, if the trial court finds it likely that striking the enhancement would result in physical injury or other serious danger to others, it need not consider or afford great weight to the defendant's proof of one or more mitigating factors. (See *ibid.*; see also *Walker*, *supra*, 16 Cal.5th at pp. 1029, 1038; *Mendoza*, *supra*, 88 Cal.App.5th at p. 297.)

In the resentencing order, the trial court considered Williams's age, childhood trauma, educational and treatment record while incarcerated, and serious rule violations while incarcerated and while in less restrictive custody. These factors comport with the factors pertinent to resentencing set

12

forth in sections 1172.1, subdivision (a)(5) and 1385, subdivision (c). After considering these factors, the court found that striking the enhancement would "endanger public safety."[4] Therefore, the court was not required to consider and give greater weight to evidence of the multiple enhancements and Williams's childhood trauma "in its exercise of what the statute explicitly acknowledges to be the 'discretion' that it affords." (*People v. Lipscomb* (2022) 87 Cal.App.5th 9, 18; see also § 1385, subd. (c)(2).) Nevertheless, the court acknowledged the two firearm enhancements and Williams's assertion that he suffered from a mental illness as represented by his substance use. The court also noted in its ruling that Williams "had childhood trauma."[5]

We discern neither legal error nor any abuse of discretion in the trial court's application of the standard set forth in section 1385, subdivision (c), and we reject Williams's challenge to the order on that basis. (See *Myers*, *supra*, 69 Cal.App.4th at p. 310 ["Where the record demonstrates that the

---

[4] We are not persuaded by Williams's argument that such a finding regarding endangerment of public safety requires either evidence of violent conduct or that such evidence be recent. Section 1385, subdivision (c)(2) refers to "physical injury *or other serious danger* to others." (Italics added.) It is not outside the bounds of reason for the trial court to consider Williams's repeated rules violations as evidence of his propensity to continue the criminal activity he engaged in prior to incarceration and therefore conclude that dismissing the firearm enhancement would pose a serious danger to others. Moreover, the court observed that almost half of Williams's violations occurred in the year preceding his motion.

[5] Although Williams maintains that the trial court did not consider these factors because the court did not include them in the table of mitigating and aggravating factors it considered, the referenced table in the court's order states that it is "[a] brief summary of [] Williams's relevant conduct *in prison*" and lists under negative factors only Williams's rules violations while incarcerated and, under positive factors, only Williams's education and treatment progress. The order does not suggest that the table is an exhaustive list of all the factors the court considered in resentencing.

trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance."].)

Williams additionally asserts that the trial court erred by "conflat[ing]" in its order the standards under sections 1172.1 and 1385. Although the court appears to have cited the "unreasonable risk to public safety" standard in section 1170.18 (pertaining to the standard for recalling and conducting a resentencing hearing) in connection with its resentencing analysis under sections 1172.1, subdivision (a)(5) and 1385, we do not agree that this stray statutory mis-citation constitutes prejudicial error. In its order elsewhere, the court correctly stated that the standard under 1172.1, subdivision (b)(2) pertains to the determination of whether to recall and resentence a defendant and acknowledged that the standard under section 1385, subdivision (c)(2) pertains to the court's exercise of its discretion to strike or dismiss an enhancement when resentencing a defendant. Absent clear indication to the contrary, we presume that the court was aware of and followed the applicable law. (*Ramirez*, *supra*, 10 Cal.5th at p. 1042; *People v. Stowell* (2003) 31 Cal.4th 1107, 1114; *People v. Mosley* (1997) 53 Cal.App.4th 489, 496.) The court's otherwise accurate recitation of the relevant laws in its order supports that presumption.

Williams has not persuaded us that the trial court either misapplied the relevant law or abused its discretion in resentencing Williams under section 1172.1, subdivision (b)(2) and in declining to strike a firearm enhancement under section 1385, subdivision (c).

### III.  DISPOSITION

The judgment is affirmed.

14

_____
Danner, Acting P. J.

WE CONCUR:

_____
Bromberg, J.

_____
Chung, J.*

**H052860**
*People v. Williams*

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.